420 F.2d 795
 Raymond MEADOWS, Defendant-Appellant,
v.
UNITED STATES of America, Plaintiff-Appellee.
 No. 24756.
 United States Court of Appeals Ninth Circuit.
 December 23, 1969.
 
 James F. Hewitt (argued), San Francisco, Cal., for defendant-appellant.
 Jerrold Lader (argued), David H. Fox, Asst. U. S. Attys., Cecil F. Poole, U. S. Atty., San Francisco, Cal., for plaintiff-appellee.
 Before MERRILL and WRIGHT, Circuit Judges, and BEEKS,* District Judge.
 EUGENE A. WRIGHT, Circuit Judge.
 
 
 1
 The question before us is whether the Supreme Court's decision in Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968) is to be applied retroactively. We hold that it is.
 
 
 2
 In Haynes, decided January 20, 1968, the Court held that a plea of the privilege against self-incrimination guaranteed by the Fifth Amendment was a complete defense to a prosecution under 26 U.S.C. § 5851 for possession of a firearm not registered pursuant to 26 U.S.C. § 5841. Appellant Raymond Meadows was indicted December 15, 1965, in the Northern District of California for violation of the identical statutory provisions involved in Haynes. He pleaded guilty on January 20, 1966, and was sentenced to a term of five years. On July 25, 1969, eighteen months after the decision in Haynes, he filed in the United States District Court for the Northern District of California a motion pursuant to Rule 32(d), F.R.Cr.P., seeking to withdraw his plea of guilty and to have the judgment against him vacated. The District Court denied the motion, and Meadows appeals.
 
 I.
 
 3
 The Government first argues that appellant cannot benefit from Haynes, whether or not that case is applied retroactively. Haynes, it is argued, did no more than to create a new defense to a prosecution under § 5851, and that defense, like all others nonjurisdictional in nature, was waived by a plea of guilty. Since appellant did not assert the privilege against self-incrimination at the trial, it is said, he may not plead it now. We cannot agree.
 
 
 4
 Waiver is "an intentional relinquishment or abandonment of a known right or privilege," Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). It can only occur if the defendant possesses "an understanding of the law in relation to the facts," McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969) and will not be presumed from a silent record. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962).
 
 
 5
 Under the circumstances of this case it is impossible to say that appellant had sufficient understanding of the "law in relation to the facts" to make a knowing waiver of his Fifth Amendment defense. At the time of his guilty plea, Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955), and United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953), overruled in Haynes and its companion cases, were still unchallenged law. In this Circuit, Starks v. United States, 316 F.2d 45 (9th Cir. 1963) and Frye v. United States, 315 F.2d 491 (9th Cir. 1963), closed the door to any contention that a plea of the privilege against self-incrimination barred prosecution under § 5851.
 
 
 6
 Appellant's mere failure to advance what at the time seemed a hopeless contention cannot fairly be deemed a deliberate renunciation of a right he knew he possessed. United States v. Miller, 406 F.2d 1100 (4th Cir. 1969); United States v. Lucia, 416 F.2d 920 (5th Cir. 1969). Nor are there any special circumstances showing waiver, as in Masterson v. United States, 293 F.Supp. 787 (D.Del.1968).
 
 
 7
 A finding of waiver on this record, moreover, seems to us forbidden by the Supreme Court's holding in Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). In that case petitioner had been indicted for two distinct offenses — failure to pay the excise tax on wagering imposed by 26 U.S.C. § 4401, and failure to pay the occupational tax required by 26 U.S.C. § 4411. He pleaded the privilege against self-incrimination as a defense to the excise tax prosecution, but omitted to do so in regard to the counts for failure to pay the occupational tax. The Supreme Court nevertheless declined to find a waiver of the privilege as to the occupational tax. 390 U.S. at 70-71, 88 S.Ct. 709.
 
 
 8
 Despite the suggestions to the contrary in Whaley v. United States, 394 F.2d 399 (10th Cir. 1968), and Sepulveda v. United States, 415 F.2d 321 (10th Cir., Aug. 11, 1969), which the Government urges us to follow, the case for waiver in Grosso was stronger, not weaker, than in this case. If waiver was not found where defendant knew his rights and actually pleaded them as a defense to another part of the same indictment, then a fortiori there should be no waiver where, as here, there is no suggestion that defendant either knew or understood his rights. United States v. Benner, 417 F.2d 421 at n. 5 (9th Cir. 1969); United States v. Manfredonia, 391 F.2d 229 (2d Cir. 1968); Harris v. United States, 390 F.2d 616 (8th Cir. 1968).
 
 II.
 
 9
 We turn, then, to the question of retroactivity, the principal issue before us.
 
 
 10
 Prior to Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), there would have been no question but that Haynes was to be applied so as to overturn convictions that had become final before its date of decision. But in Linkletter the Supreme Court, abandoning its earlier practice of applying "new constitutional rules to cases finalized before the promulgation of the rule," 381 U.S. at 628, 85 S.Ct. at 1737, determined that prospective application of an overruling constitutional decision was justified: (1) where there had been substantial reliance by law enforcement authorities on the overruled decision; (2) where retroactive application of the new rule would have a substantial adverse impact on the administration of justice; and (3) where the abuse corrected by the new rule did not go to the "very integrity of the fact-finding process." Linkletter, 381 U.S. at 639, 85 S.Ct. at 1743; Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).
 
 
 11
 Absent such circumstances, we think it continues to be true that "[t]he essential function of courts * * * requires that the normal mode of judicial operation be retroactive," Mishkin, "The Supreme Court, 1964 Term, Foreword: The High Court, the Great Writ, and the Due Process of Time and Law," 79 Harv. L.Rev. 56, 60 (1965). This principle reflects the constraints appropriate to a system of judicial, as opposed to legislative, decision-making, cf. James v. United States, 366 U.S. 213, 224-225, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961) (opinion of Black, J.); Note, "Prospective Overruling and Retroactive Application in the Federal Courts," 71 Yale L.J. 907, 931-32 (1962), as well as considerations arising from fairness to similarly situated defendants, see Currier, "Time and Change in Judge-Made Law: Prospective Overruling," 51 U.Va.L.Rev. 201 (1965); Schwartz, "Retroactivity, Reliability, and Due Process: A Reply to Professor Mishkin," 33 U.Chi.L.Rev. 719 (1966), and from the difficulties otherwise created in the application and development of precedent, Desist v. United States, 394 U.S. 244, 258-259, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (opinion of Harlan, J.).
 
 
 12
 Retroactivity, indeed, has been denied in two classes of cases only. First, there are the cases where the clear purpose of a new rule is to deter conduct extrinsic to the trial itself and unlikely substantially to affect the reliability of the determination of guilt. Such cases have principally involved the exclusion of evidence obtained by illegal searches and seizures. Desist v. United States, supra; Fuller v. Alaska, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968); Linkletter v. Walker, supra; cf. Williams v. United States, 418 F.2d 159 (9th Cir. 1969). Second, there are the cases where the purpose of the new rule is ambiguous, but where retroactive application would mean substantial disappointment of rightful reliance on the old rule by law enforcement authorities, and place grave burdens on courts called upon to reopen cases long since closed. DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966).
 
 
 13
 But where the purpose of the new rule is to ensure the accuracy of the determination of guilt, or to correct an abuse that endangers "the very integrity of the fact-finding process," Linkletter, 381 U.S. at 639, 85 S.Ct. at 1743, then decisions announcing the new rules have been held fully retroactive, Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968); Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968). This has been so even when retroactivity defeated well-founded prosecutorial expectations and required reopening of substantial numbers of cases. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Witherspoon v. Illinois, 391 U.S. 510, 523 n. 22, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).
 
 
 14
 We believe that the rule announced in Haynes falls into the latter category of cases. The "integrity of the * * * process" by which appellant was tried and sentenced is no less impugned by his conviction for an offense that the United States has no power to punish than by his conviction for an offense he did not commit. In both situations the defect in the conviction, unlike that involved when illegally seized evidence is admitted or even when an improperly procured confession is received, goes to the very center of the legal justification for the punishment imposed. To be valid, a punishment following upon the determination that a certain set of facts exists must necessarily presuppose that that set of facts constitutes an offense, see H.L.A. Hart, Punishment and Responsibility 5. The decision in Haynes negates precisely that presupposition by holding that, as against a plea of the privilege of self-incrimination, § 5851 creates no offense. A punishment in disregard of Haynes hence cannot stand.
 
 
 15
 We may note that the practical consequences of our decision, in terms of reliance by law enforcement officials or the effect on judicial administration, will be small. Few convictions will be affected, as compared with the huge numbers that would have been overturned had United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), or Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966), been given retroactive effect. Nor is there a prospect of the sort of "difficult and time-consuming" burden on the lower courts that the Supreme Court feared would be imposed by holding Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), retroactive. Desist v. United States, 394 U.S. 244, 251, 89 S.Ct. 1030, 22 L.Ed.2d 248. A plea of the privilege being a complete defense to a prosecution under § 5851, there is reason to anticipate neither protracted evidentiary hearings on applications for post-conviction relief nor a wave of reprosecutions of those who were convicted prior to Haynes.
 
 
 16
 Our conclusion in this case agrees with those reached by the Fourth and Fifth Circuits in similar cases. United States v. Miller, 406 F.2d 1100 (4th Cir. 1969); United States v. Lucia, 416 F.2d 920 (5th Cir. 1969). We have read Graham v. United States, 407 F.2d 1313 (6th Cir. 1969), and respectfully disagree.
 
 
 17
 Reversed and remanded to the District Court with instructions to grant appellant's motion.
 
 
 
 Notes:
 
 
 *
 The Honorable William T. Beeks, United States District Judge for the Western District of Washington, sitting by designation