**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Michael Scott WELLS, Defendant-Appellant.**

**No. 24957.**

United States Court of Appeals, Ninth Circuit.

July 27, 1970.

Michael S. Hegner (argued), of Hecsh, Hegner & Philbin, San Diego, Cal., for appellant.

Ann Bowen (argued), Asst. U. S. Atty., Richard K. Burke, U. S. Atty., JoAnn Diamos, Asst. U. S. Atty., Tucson, Ariz., for appellee.

Before MADDEN, Judge, United States Court of Claims,* DUNIWAY and KILKENNY, Circuit Judges.

DUNIWAY, Circuit Judge:

On February 18, 1969, Wells was indicted on three counts, which charged, Count I, bringing 305 pounds of marihuana across the border in violation of 21 U.S.C. § 176a, Count II, failure to pay the tax on marihuana in violation of 26 U.S.C. § 4744(a), and Count III, bringing in merchandise (¾ of a pound of peyote) without unladening it for customs inspection in violation of 18 U.S. C. § 545. Wells pleaded not guilty on all three counts.

---

* Honorable J. Warren Madden, Judge, United States Court of Claims, sitting by designation.

On April 21, 1969, Wells requested leave of the court to withdraw his not guilty plea as to Count II and to enter a guilty plea on that count. The court granted his request and received the guilty plea. On June 23, 1969, it sentenced Wells under the provisions of the Federal Youth Correction Act. The United States Attorney then requested that Counts I and III be dismissed and the court dismissed them.

Within 29 days, on July 22, 1969, Wells petitioned for withdrawal of his plea of guilty or alternatively for permission to file a petition for delayed appeal. The court denied the motion for leave to withdraw the plea, and extended the time within which Wells could file a notice of appeal. Wells filed his notice of appeal on August 1, 1969. While it refers only to the judgment, we treat it as also applicable to the denial of the petition for leave to withdraw the plea. The government makes no contrary claim.

■ Wells makes two claims on this appeal. 1. That the court should have advised him of the effect of the decision in Leary v. United States, 1969, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57. Leary was decided after Wells pleaded guilty but before he was sentenced. It held that the statute (26 U.S.C. § 4744(a) (2)) which supported the charge to which Wells pleaded guilty infringes the privilege against self-incrimination. 2. That he should have been advised of all the ramifications of sentencing under the Federal Youth Correction Act as opposed to the regular adult sentence. We find no merit in the second claim. Wells was told by the judge that if probation were not granted, the prison sentence under Count II would have to be at least 2 years and could be 10 years. The maximum possible incarceration under the Youth Correction Act is 6 years. Thus cases like Freeman v. United States, 9 Cir., 1965, 350 F.2d 940, are not applicable. The sentence given was less onerous than Wells knew that he might receive. We remand for a hearing as to the first claim, but not limited to the precise question as to whether the court should have advised him about Leary.

■ We decided in United States v. Ingman, 1970, 426 F.2d 973, that, as they affect 26 U.S.C. § 4744(a), Leary v. United States, supra, and United States v. Covington, 1969, 395 U.S. 57, 89 S.Ct. 1559, 23 L.Ed.2d 94 (dealing with § 4744(a) (1)) are retroactive. Thus, they apply here. This case, however, involves a plea of guilty, and the government argues that Wells waived his privilege against self-incrimination by entering the plea. A guilty plea is indeed a waiver of the privilege; it is the most conclusive form of self-incrimination.

■ The government bases its arguments on information contained in a series of affidavits submitted by Wells in support of his various petitions in the lower court. Wells pled guilty on April 21, 1969. Leary was decided on May 19, 1969, and Wells was sentenced on June 23, 1969. Wells stated in one of his affidavits, dated July 17, 1969, that after Leary was decided but before he was sentenced he "read about this case in the newspapers and attempted to find out if it might be relevant to my case. I wrote to my attorney, Charles Giles, and asked him about it. He said he was unable to answer until he had read a 40-page brief and that it would take two months or more before he could advise me. He never mentioned it again." In an affidavit filed July 24, 1969, Wells said, "[a]fter I had entered a plea of guilty in my case to the Stamp Tax violation, I learned that my rights against self-incrimination may have been violated. I do now specifically claim my rights of [sic] self-incrimination as an excuse and justification for not having complied with the statutes concerning registering marijuana transfers." The affidavit of Wells' trial counsel does not mention this subject. The government reads these affidavits to mean that Wells was perfectly aware of his Leary de-

fense. Thus, it argues he waived any right not to claim the benefits of *Leary*.

On this record, we cannot agree. All we know is that Wells himself was aware that *Leary* had been decided and that it *might* alter his position. Under the circumstances we cannot find from Wells' affidavits, uncontradicted in the record, that there was the requisite knowledge to constitute a knowing waiver. See Meadows v. United States, 9 Cir., 1969, 420 F.2d 795. It does not follow, however, that the plea must be set aside.

It is apparent that the plea was entered as part of a "bargain." When the plea was entered, the following occurred:

"THE COURT: Now, we haven't talked about any count other than Count 2 and that makes me believe there is probably some understanding between the Government and the defendants about Counts 1 and 3.

MISS DIAMOS: Your Honor, Government counsel has told both defense attorneys that the Government will dismiss Counts 1 and 3 on the entry of judgment and proceed on Count 2. And I represent further that there are no other agreements or representations made to the defendants.

MR. GILES: That is correct, Your Honor.

MR. ECONOMIDAS: That is correct, Your Honor.

THE COURT: More accurately the Government will recommend or ask leave to dismiss.

MISS DIAMOS: Excuse me, Your Honor, yes, Your Honor."

Wells derived a real benefit from the bargain. He was accused in Count I of a violation of 21 U.S.C. § 176a. The penalty for such a violation is severe, a minimum prison term of 5 years and a maximum of 20 years, without possibility of probation or parole, plus a fine of up to $20,000. (See 26 U.S.C. § 7237 (d)). The penalty under Count II is less severe. Section 4744(a) is one of the statutes referred to in 26 U.S.C. § 7237 (a) imposing penalties, and it fixes the penalty for a first offense at a minimum

of 2 and a maximum of 10 years, plus a possible fine of not more than $10,000. It does *not* prevent the possibility of parole or probation. See 26 U.S.C. § 7237(d). It seems apparent that the Count I and Count II charges arise out of the same transaction. It is therefore almost certain that Wells pled guilty to Count II to avoid the more severe penalty imposed by Section 176a. It was part of the deal that Counts I and III were dismissed. From this it can be further argued that having elected thus to make his bed, Wells should be required to lie in it.

To this a possible answer is that Wells can hardly be said to have made his bed intelligently if it be true that he did not know that he had a complete defense to Count II. This possible answer is reinforced by the fact that in Count III Wells was also charged with violation of 18 U.S.C. § 545. The penalty for an offense under that statute is a fine of not more than $10,000 and a maximum prison term of 5 years, with no minimum, and there are no restrictions on the possibility of probation or parole. Thus Count III offered the possibility of a lesser penalty than did either Count I or Count II. Refusal to plead guilty to Count II would thus not have deprived Wells of a chance to bargain. Who can say with even a modicum of confidence that if Wells had known that he could totally defeat Count II under *Leary* and *Covington*, he would not have done so and then bargained for a plea under Count III rather than Count II, or that, if he had made the attempt so to bargain, he would not have been successful?

There are statements in the affidavits submitted by Wells indicating that he hoped to get probation, although the record makes it perfectly clear that he had not been promised probation, and it is inferable that it is only because those hopes were not realized that he now seizes upon *Leary* as a ground for nullifying his plea. The affidavit of Wells' mother stated that she overheard her son tell his attorney on the day he was

sentenced, "[i]f I don't get probation, I want you to file an appeal immediately." An affidavit by Wells' attorney states, "[t]hat Michael Scott Wells inquired of him regarding possible post-sentencing procedures, but that it was agreed that post-sentencing procedures would not be discussed until after the sentencing." Wells also stated that he "told [his] attorney that if [he] did not receive probation that [he] wanted him to file an appeal immediately." The fact may be that Wells was so desirous of escaping from Count I that he was perfectly willing to stand on his guilty plea to Count II, whether he understood the full effect of *Leary* or not.

On this meager record, we cannot say with assurance that Wells' plea was intelligently made, or that he is bound by his bargain, although the facts may be such that both conclusions would follow.

Furthermore, three recent decisions of the Supreme Court seem to us to inject additional problems into the case. These decisions are Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747, Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785, and McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763, all decided on May 4, 1970. They all involve attacks on guilty pleas, alleged to have been induced by some violation of the Constitution. Each stands for the proposition that such a plea may nevertheless be valid. Perhaps *Brady* is most clearly in point here, because it involved the entry of a plea under fear of a possible death penalty, the portion of the statute providing for such a penalty having later been held unconstitutional. But none involved the precise question here presented, a guilty plea to a count based upon a statute later held to be violative of the Fifth Amendment, so that prosecution under it could have been, as a matter of law, totally defeated had the defendant known his rights. Again, however, the record in this case is too skimpy to permit us to pass upon the applicability of the rationale of those cases here.

In *Brady* and *Parker* there had been hearings as to the voluntariness of the pleas. In *McMann,* the Court held that hearings were not required where it was claimed that each of the pleas was induced by a coerced confession, and each defendant had had counsel. The Court held:

"We hold, therefore, that a defendant who alleges that he pleaded guilty because of a prior coerced confession, is not, *without more,* entitled to a hearing on his petition for habeas corpus." (Emphasis added.) See Part IV, page 1449.

The Court presumed, in the absence of any contrary allegation, that each defendant had had the advice of counsel on the matter before his plea was entered. It emphasized this aspect of the cases: "Neither do we have before us the uncounselled defendant * * *." (397 U.S. p. 767, 90 S.Ct. p. 1447); "The issue on which we differ with the Court of Appeals arises in those situations involving the counselled defendant * * *." (p. 767, 90 S.Ct. p. 1447). Parker had counsel (397 U.S. 793, 796, 90 S.Ct. 1460, 1462). So did Brady, (397 U.S. 743, 749, 756, 758, 90 S.Ct. 1466, 1469, 1473, 1474).

Here, there is "more." Wells alleges that he asked for counsel's advice and did not get it. We cannot presume that the allegation is false. Thus we cannot hold, as a matter of law, that Wells was "counselled" as were the defendants in *Brady, Parker* and *McMann.* Whether Wells' claim is true can only be determined at an evidentiary hearing.

In these respects this case also differs from our decision in United States v. Weber, 1970, 429 F.2d 148. (No. 25107, July 9, 1970). Weber had counsel, and he nowhere claimed that he had not been fully advised. *Weber* also differs in another respect. There, there was only one other count in addition to the § 176a count; if Weber wanted to bargain, he could bargain only

for the tax count to which he pled guilty. Here, there was a third count as to which Wells might have bargained had he known that he could defeat the tax count. He may have attempted, unsuccessfully, to do so, but the record does not tell us that.

■ We have grave doubts as to Wells' wisdom in pressing his motion for leave to withdraw his plea. If he is ultimately successful, we know of nothing to prevent the government from reviving the two counts that were dismissed by the trial judge. See Munich v. United States, 9 Cir., 1964, 337 F.2d 356, 361; United States v. Chase, 4 Cir., 1967, 372 F.2d 453, 463; Mann v. United States, 1962, 113 U.S.App.D.C. 27, 304 F.2d 394, 397. Wells could thus find himself once more confronted with a possible conviction under Count I, and the very severe penalties under that count that he escaped by entering the plea. See Ward v. Page, 10 Cir., 1970, 424 F.2d 491. However, his counsel advised us at oral argument that he had explained this problem to Wells, who nevertheless instructed him to proceed.

The order denying the petition for leave to withdraw the plea of guilty under Count II of the indictment is vacated, and the matter is remanded for an evidentiary hearing on the petition, and for such further proceedings as may then be appropriate.

KILKENNY, Circuit Judge (dissenting):

I do not share the views of the majority on the non-applicability to this factual background of the principles employed by the Supreme Court in Brady v. United States, Parker v. North Carolina and McMann v. Richardson, each decided May 4, 1970. In my judgment, those cases are very persuasive, if not controlling. Neither Meadows v. United States, 420 F.2d 795 (9th Cir., 1969), nor United States v. Ingman, 426 F.2d 973 (9th Cir., 1970) is authoritative on these facts. See United States v. Weber, 429 F.2d 148 (9th Cir., July, 1970).

Moreover, I believe this record supports a conclusion that appellant was well aware of *Leary* prior to his sentencing. Beyond question, his acts subsequent to his knowledge of *Leary* were knowingly and intelligently done, and, I believe, with sufficient awareness of the relevant circumstances and all likely consequences.[1] He took a gambler's chance on probation and lost.[2] The judicial process, by any standard, should not be so exploited. In these circumstances, I would hold that appellant waived such rights as he might otherwise have.

I would affirm.

---

1. "A plea of guilty was entered on April 21, 1969 and sentencing occurred on June 23, 1969. During the intervening period of time, the United States Supreme Court handed down the *far reaching* decision of *Leary*. The defendant was not able to, and in fact did not, understand the *ramifications* of the *Leary* decision * * *" (Emphasis supplied.) [From appellant's petition for withdrawal of guilty, p. 1].

2. "That I entered a plea of guilty of evading the stamp tax on April 21, 1969, prior to the decision of the United States Supreme Court in U. S. v. Leary.* After that time and prior to my sentencing on June 23, 1969, I read about this case in the newspapers and attempted to find out if it might be relevant to my case. I wrote to my attorney, Charles Giles, and asked him about it. He said he was unable to answer until he had read a 40 page brief * * *."
\* \* \* \* \*
"On the way to the courtroom on the morning prior to sentencing *I told my attorney that if I did not receive probation that I wanted him to file an appeal immediately.* He did not answer. * * *" (Emphasis supplied.) [From appellant's affadavit supporting his petition for withdrawal of plea of guilty].

\* Decided May 19, 1969, over one month prior to sentencing.