STATE of Missouri, Plaintiff-Respondent,

v.

William Victor NIELSEN,
Defendant-Appellant.

No. 36260.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Jan. 4, 1977.

Motion for Rehearing or Transfer
Denied Feb. 16, 1977.

**154**

Alan G. Kimbrell, Rosecan, Popkin & Chervitz, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, J. Michael Davis, Asst. Attys. Gen., Jefferson City, Courtney Goodman, Jr., Pros. Atty., Joseph A. Derque, III, Gene H. Fahrenkrog, Jr., Asst. Pros. Attys., Clayton, for plaintiff-respondent.

SIMEONE, Judge.

This is an appeal by the movant-appellant, William Victor Nielsen, from an order of the circuit court entered on April 4, 1974, overruling appellant's motion to withdraw his plea of guilty pursuant to Rule 27.25.[1] The motion to withdraw was made before he was sentenced to thirty years imprisonment for the offense of murder in the second degree. For reasons hereinafter stated, we affirm.

Movant, William Victor Nielsen, was originally charged with murder in the first degree for the alleged killing of his father-in-law, Leonard Besel,[2] on March 9, 1973. He was arrested at the home of a friend in the City of St. Louis for the offense and some hours later made a statement which implicated him in the murder. Throughout the day and that evening prior to his arrest, he had been taking numerous and sundry drugs. Prior to trial, a motion to suppress his statement was made by defense counsel.[3] Hearing was held on that motion on September 5, 1973. This motion was heard by the same judge who subsequently heard the plea of guilty and the motion to withdraw and who sentenced the movant to thirty years imprisonment.

On the motion to suppress statements made by Nielsen, the testimony showed that during the day of the murder, March 9, 1973, beginning at about 11:00 a. m., movant had taken some drugs—"Grass, acid and Darvons" and that "[a]round seven or eight o'clock" he arrived at the home of his friend—Joe Speaks—in the City of St. Louis. While there for the evening, he sat around and talked with friends "smoking dope" and he took "[t]wo (2) hits of acid, smoked two and a half (2½) lids[4] of grass

---

1. An order overruling a motion to withdraw a plea of guilty is an appealable order. *State v. White*, 429 S.W.2d 277, 281 (Mo.App.1968).

2. Sometimes spelled in the various transcripts as "Leonard Beset" or "Leonard Bizzel."

3. Throughout the proceedings there were numerous counsel representing the movant. Different counsel represented him at the motion to suppress the statement, at the trial which ended in a mistrial, at the plea of guilty, on the motion to withdraw the plea and sentence and on this appeal. The same attorney, however, represented the movant on the plea of guilty and on the motion to withdraw and sentencing. Present counsel was appointed on this appeal by the trial court.

4. Movant described a "lid" as about seventy or ninety cigarettes. Later he indicated that he smoked a total of about twenty or thirty" cigarettes (reefers).

and dropped six (6) or seven (7) Darvons." During the previous day and a half, he had only about three and one half hours of sleep and that was during the afternoon of March 9, 1973. About midnight on March 9, two police officers of St. Louis County— Officers George Ice and Sam Yarborough— based upon information they had received earlier in the evening from relatives of the deceased, proceeded to the home of Mr. Speaks and inquired whether the movant was present. After determining that he was, Nielsen was requested to "come out to the car" so that the officers could speak to him. The officers drove around attempting to reach the dispatcher and finally pulled onto a grocery store parking lot nearby. On the lot was Mr. Besel's automobile; the officers asked movant for the keys to this automobile and he [Nielsen] placed them on the trunk of the patrol car or gave them to Officer Yarborough. The keys fit the automobile and movant was placed under arrest by Officer Ice.

According to Officer Ice, he informed Nielsen of his constitutional rights and Nielsen indicated he understood them. At the scene, Nielsen did not implicate himself in the killing of Mr. Besel and indicated he knew nothing about the killing. The officers stayed on the grocery parking lot for "approximately two hours" while movant, Nielsen, "went to sleep in back of the police car." Finally, the officers arrived at County Police Headquarters "between 2:00 and 3:00" a. m. on March 10, 1973. After Nielsen was fingerprinted and booked, he was left there and the two officers did not see him again until 9:30 or 10:00 a. m. the next morning.

Nielsen's testimony at the hearing on the motion to suppress was that when the officers came to Speaks' home, he went out to the patrol car and after the two officers exchanged a few words one of them said, ". . . [d]on't bother about questioning him, he's too doped up," "too messed up" or "too far gone." After the officers obtained the keys to Mr. Besel's automobile on the parking lot, Nielsen got into the back seat of the patrol car and "went to sleep." He woke up later in front of the "Clayton Court House"(?). He was taken into an office where other officers were present. It was "[a]round 1:00 when we arrived." He contends that questioning took place throughout the night, that he was not advised of his rights, and that at about 5:00 a. m. was taken to Clayton jail. Movant testified that he made a statement about 4:00 a. m. which was typed up and handed over "to me" and he was told to "sign it." [5]

According to Officers Ice and Yarborough, however, they did not interrogate him until the next morning at about 9:30 or 10:00 a. m. At that time, movant apparently gave several versions of what happened but the "stories . . . just didn't hold" so he was conveyed to the "hold-over" about 11:30 a. m. Officer Ice testified that on the morning of March 10, Mr. Nielsen finally "told everybody to leave the office but Detective Yarborough, [and] that he would tell Yarborough exactly what had happened." Finally, about 12:30 or 1:00 p. m., after having given certain statements containing discrepancies, "tears came to his eyes" and Nielsen gave a statement to Yarborough which implicated him in the death of his father-in-law. The statement was transcribed.

Both officers testified at the hearing on the motion that at the time they first saw Nielsen late in the evening of March 9, or early in the morning of March 10 he seemed to be "glassy-eyed" and tired, but he responded to questions asked.[6]

---

**5.** At one point during the hearing on the motion, movant testified that he was questioned "from about five o'clock and then [I was] brought . . . over to the Clayton Police station . . . ."

**6.** Officer Ice testified that: "Well, I could not really describe him as intoxicated or high, he seemed to be glassy-eyed, however, all our

questions that we asked, he responded to them. We did not have to repeat any of the questions. He seemed tobe [sic] very tried [sic], but he responded to our questions." Detective Yarborough testified that: "He appeared tired. I wouldn't say his physical state was normal, but then as far as asking him his name and so forth, and so on, he responded to our questions and answered them." When he was brought to

At the end of the hearing on the motion to suppress, although the record does not clearly state, the motion was overruled.

In October, 1973, the movant proceeded to trial before a jury. He was then represented by the public defender. During the opening statement of the assistant circuit attorney, he outlined the evidence which would be presented to the jury which included the testimony of Officers Ice and Yarborough that ". . . the defendant voluntarily and freely later on made a statement admitting the killing of the victim in this case, Leonard Besel."

After a four-day trial and during the presentation of the evidence, a motion for mistrial was made and granted. Later, the defendant withdrew his plea of not guilty and entered a plea of guilty to a charge of murder in the second degree.

On January 28, 1974, his plea was taken. Counsel for the state amended the charge to murder in the second degree, and counsel for Nielsen withdrew the prior plea of not guilty and formally entered a plea of guilty. The court addressed Mr. Nielsen and questioned him concerning the facts and other matters. The court inquired whether he gave his permission to enter a guilty plea and also questioned him about the facts surrounding the death of Mr. Besel. Mr. Nielsen admitted that he stabbed Mr. Besel during the afternoon of March 9, 1973, and that he and his father-in-law engaged in an argument because the father-in-law accused him of "having his [Besel's] kids sniffing tea leaves." Nielsen stated that they had a struggle; Mr. Besel "got a knife out," and Nielsen took it away and stabbed him ten or eleven times. Nielsen also used a billy club during the affray. Other details concerning Nielsen's background and other matters were brought out. The plea was quite detailed. Nielsen stated that he was not under the influence of any drugs or alcohol, that he discussed the matter of the plea with his attorney before entering it,

the station the next morning, he "appeared normal."

that no threats or promises were made and that he recognized he was entitled to various constitutional rights. The court informed him that it would follow the recommendation of the prosecutor's office and would sentence him to thirty years. The plea was accepted and formal sentencing was deferred until a pre-sentence investigation could be made.

In March, 1974, and prior to the formal sentencing, movant filed a motion to withdraw the guilty plea.[7] A hearing was held on this motion on April 4, 1974, before the same judge who earlier had heard the motion to suppress the statement (or statements). Mr. Nielsen's attorney (the same attorney who represented him on the guilty plea) testified that after the plea had been entered he "ran into" Mr. Timothy O'Connor, employed by the St. Louis County Welfare Department, and counsel discussed the Nielsen case with him. Counsel testified that O'Connor told him that he remembered the Nielsen case when he was brought to the jail on March 10, 1973, and that ". . . he could recognize a person who is under the influence of narcotics." O'Connor felt that any statement or confession Nielsen gave "would be unreliable" because he was "spaced out." Counsel argues on the motion to withdraw that if he had been aware of this evidence he would have presented it at the earlier motion to suppress, and, not having obtained the information from O'Connor prior to the motion to suppress, he felt that "the defendant has had ineffective assistance of counsel." Counsel further argued that if he had been aware of the observers' testimony prior to the guilty plea, he would never have advised that appellant enter a plea of guilty. Counsel requested that the court hear two witnesses, Mr. West and Mr. O'Connor, who would testify as to Nielsen being under the influence of drugs so that any confession or statement might well have been suppressed at the hearing on the motion to suppress the statement(s).

7. The brief for the appellant indicates that the motion to withdraw was made a week after the plea proceeding. Actually the motion was made in March, 1974.

The two persons who had observed Nielsen when he was in jail in March, 1973, testified at the hearing on the motion to withdraw the plea. Mr. Fred West's testimony, however, was of no aid to movant. West remembered Nielsen "a little bit" when he was brought to the jail, and although he "seemed to be under the influence of something,"

"I wouldn't know if he was under the influence of drugs or not. I didn't pay him that much attention. . . . I saw him a couple of times right after he first came in, but I wouldn't know if he had been drinkin [sic] or not. He just looked a little drowsy eyed, that's all."

Mr. O'Connor, however, testified on the motion that he had worked as an undercover agent, made "buys," had 15–18 classroom hours regarding narcotics, and was familiar with the type of condition that a person exhibits when under the influence of narcotic drugs and withdrawal. He recalled Nielsen being brought in—and about the third hour he was there, ". . . he was a little noisy, upset a little, belligerent, and they had to place him back in a two man cell by himself. He had all the symtoms [sic] of withdrawal." O'Connor also stated that he told a woman at the booking desk "we had a junky in hold-over."

The court, after hearing this testimony, overruled the motion to withdraw stating, ". . . I feel that if he hadn't made a case against himself, I would not have accepted his plea."

After overruling the motion, after receiving the pre-sentence report which recommended against probation, and after granting allocution, the court sentenced Mr. Nielsen to thirty years in the department of corrections. An appeal was then taken from the court's order overruling the motion to withdraw.

On this appeal the appellant contends that "[t]he court erred in refusing to allow the defendant to withdraw his plea, prior to sentencing, in that the ignorance of defendant and his lawyer of the existence of an independent witness [O'Connor] to defend-

ant's drugged state at the time of his confession rendered the attorney's advice [to plead guilty] incompetent and the defendant's plea unintelligent."

The State ignores the basic contention and authorities relied upon by the appellant and is content to point out that the trial court did not abuse its discretion in overruling the motion to withdraw since the appellant received competent assistance of counsel and his plea was voluntary.

As we view it, the thrust of appellant's contention is that had O'Connor been located by counsel prior to the motion to suppress Nielsen's statement and had O'Connor testified at the hearing on the motion to suppress his corroborating testimony concerning withdrawal symptoms may well have tipped the scales so that the trial court hearing the motion to suppress may have held the confession to be involuntary and constitutionally inadmissible and, hence, may well have sustained the motion. If the statement had been held inadmissible, then in turn this would have had an effect on movant's plea of guilty, for without the statement, defense counsel probably would not have advised appellant to plead, and Nielsen probably would not have pleaded to the offense. Hence, the plea was not intelligently made so that the plea should have been allowed to be withdrawn. Appellant requests therefore that we reverse the trial court with directions to set aside the plea of guilty so that a new hearing may be had on the motion to suppress the confession. After that, then the appellant will be in a better position to determine what further proceedings may be taken.

In effect, appellant contends that he and his counsel on the motion to suppress were unaware of the "facts" which were testified to by O'Connor corroborating his drugged condition which may well have rendered the confession inadmissible, so that such unawareness constitutes (1) ineffective assistance of counsel, and (2) makes the plea based on advice to plead guilty unintelligent and involuntary. Under the circumstances, he contends that the trial court

abused its discretion in overruling his motion to withdraw his guilty plea.[8]

The precise issues confronting us, as we view them, therefore, are: (1) if movant-appellant and his counsel were unaware of certain facts at the time of the hearing on the motion to suppress the confession which may have rendered the confession constitutionally inadmissible, (a) does such unawareness constitute ineffective assistance of counsel, and (b) does the advice to plead guilty based on such unawareness render the subsequent plea unintelligent and involuntary so that appellant's motion to withdraw his plea should be sustained; and (2) whether the trial court in refusing to sustain the motion to withdraw the plea under such circumstances was clearly erroneous and abused its discretion.

Appellant relies on numerous federal authorities which, he contends, support his thesis that in such instances the plea was unintelligent and should be set aside.

■ We are governed in this proceeding to withdraw the guilty plea by certain well recognized principles: (1) on appeal from a denial of a motion to withdraw a guilty plea our review is limited to a determination of whether the ruling of the trial court was clearly erroneous, *Young v. State,* 438 S.W.2d 280, 283 (Mo.1969), *State v. Davis,* 438 S.W.2d 232, 234 (Mo.1969), or there was an abuse of discretion; (2) the burden is on the movant to prove by a preponderance of evidence that the court erred in overruling the motion to withdraw

the plea of guilty, *cf. Beach v. State,* 488 S.W.2d 652, 656 (Mo.1972); (3) a movant does not have an absolute right to withdraw his plea of guilty whether before or after sentence, *State v. Jackson,* 514 S.W.2d 638, 641 (Mo.App.1974),[9] and may do so only in extraordinary circumstances, *Mooney v. State,* 433 S.W.2d 542, 544 (Mo.1968); and (4) if there is evidence that the defendant was misled or induced to plead guilty because of fraud, mistake, misapprehension, fear, persuasion or holding out of hopes which prove to be false or ill-founded, he should be permitted to withdraw his plea since the law favors a trial on the merits, *State v. Rose,* 440 S.W.2d 441, 443 (Mo. 1969).

■ Tested by these principles, we conclude that under the circumstances of this record the trial court did not abuse its discretion in overruling the motion to withdraw the plea and affirm the order overruling the motion to withdraw.

Rule 27.25 provides: "A motion to withdraw a plea of guilty may be made only before sentence is imposed or when imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

Under this rule the withdrawal of a guilty plea, whether the motion is made prior to or after sentence, is not a matter of right.[10] A defendant may not by reason of

---

**8.** He contends that, unlike most instances, the motion to withdraw the guilty plea was here made *prior* to sentence, so that the same standard—"to correct manifest injustice" is not applicable to a motion to withdraw prior to sentencing. The law, he contends, favors a trial on the merits, and the State could not be prejudiced by sustaining the motion to withdraw prior to sentence.

**9.** Most of the decisions hold that a defendant may not withdraw his plea of guilty as a matter of right after sentence—*Huffman v. State,* 499 S.W.2d 565, 568 (Mo.App.1973); *State v. Tyler,* 440 S.W.2d 470, 472 (Mo. banc 1969); *Watson v. State,* 446 S.W.2d 763, 767 (Mo.1969). After sentence the plea may be withdrawn only to "correct manifest injustice." Rule 27.25. The

standard prior to sentence has not been fully articulated in this state.

**10.** *State v. Parker,* 413 S.W.2d 489, 494 (Mo. banc 1967), *cert. den.,* 390 U.S. 906, 88 S.Ct. 823, 19 L.Ed.2d 874 (1968)—after sentence; *State v. Kellar,* 332 Mo. 62, 55 S.W.2d 969, 971 (1932).

The standard after sentence is "to correct manifest injustice." Our research fails to disclose any decisions in Missouri which articulate the standard prior to sentence. In the federal system under Rule 32, the standard is less than "manifest injustice." The standard is that of "fair" and "just." *United States v. Barker,* 168 U.S.App.D.C. 312, 514 F.2d 208, 220 (1975), *cert. den.,* 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975).

Rule 27.25 withdraw his plea as a matter of right. *State v. Mountjoy,* 420 S.W.2d 316, 323 (Mo.1967). As in the Federal system, under comparable Rule 32, Fed. Rules Crim. Proc., the withdrawal of a guilty plea before sentencing is not an absolute right but a decision resting in the sound discretion of the trial court which will be reversed only for an abuse of that discretion. *Hughes v. United States,* 371 F.2d 694, 695 (8th Cir. 1967); *United States v. Simmons,* 497 F.2d 177, 178 (5th Cir. 1974), *cert. den.,* 419 U.S. 1048, 95 S.Ct. 623, 42 L.Ed.2d 643 (1974).[11]

■ The burden rests upon the movant to prove that the trial court abused its discretion in refusing to set aside the plea. *State v. Harris,* 420 S.W.2d 325, 327 (Mo. 1967). The ultimate test whether a plea should be set aside is whether it was made unintelligently and involuntarily. If an accused is misled or induced to plead guilty by mistake, misapprehension, persuasion or the holding out of hopes which prove to be false or ill-founded, he should be permitted to withdraw his plea. *State v. Good,* 403 S.W.2d 594, 599 (Mo.1966); *State v. Parker,* supra, 413 S.W.2d at 494.

Appellant contends that, since he and counsel were unaware of the facts of O'Connor's corroborating evidence that he was suffering from withdrawal symptoms at the time he made a statement,[12] the unawareness of such facts constitutes ineffective assistance of counsel and renders the subsequent plea of guilty unintelligent. He relies on the federal trilogy—[*Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970)] and *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), as well as other federal and state decisions.[13] In each of the trilogy, attacks were made on the guilty pleas alleged to have been induced by some violation of the Constitution. Each, however, stands for the proposition that such a plea may nevertheless be valid.

These decisions [*Brady, McMann* and *Parker*] hold that a plea of guilty entered by a counseled defendant is not unintelligible or involuntary even where there are later assertions of claimed violations of constitutional rights unless the advice of counsel was not within the range of competence demanded of attorneys in criminal cases. And this is true even though the defendant or counsel is unaware of certain matters unless it is "demonstrated" that the advice was not within the range of competence.

---

11. " 'The withdrawal of a plea of guilty is not a matter of right. A motion for leave to withdraw a plea of guilty and substitute a plea of not guilty is addressed to the sound discretion of the court and should be denied if the defendant knew and understood what was being done and there were not present any circumstances of force, mistake, misapprehension, fear, inadvertence or ignorance of his rights and understanding of the consequences of his plea.' " *Hughes v. United States,* supra, 371 F.2d at 695, quoting from *United States v. Ptomey,* 366 F.2d 759, 760 (3rd Cir. 1966).

12. It is difficult to determine from the record which statement is being contested. Apparently there were several statements. Movant testified on the motion to suppress that he made a statement about 4:00 a. m. Officer Yarborough testified that he did not see Nielsen until the next morning and that he made a statement about noon on March 10.

13. *United States v. Miller,* 406 F.2d 1100 (4th Cir. 1969) [unawareness of a case pending in the Supreme Court of the United States]; *Pow-*

*ell v. Hocker,* 453 F.2d 652 (9th Cir. 1971), and *United States v. Wells,* 430 F.2d 225 (9th Cir. 1970).

*United States v. Miller,* supra, 406 F.2d 1100, held that appellants were entitled to withdraw their pleas of guilty because at the time of the plea counsel was not aware of a decision pending in the Supreme Court which held that the privilege against self-incrimination bars prosecution under the federal firearms act. The court did not discuss the ramifications of *Tollett,* but only discussed the retroactivity of the Supreme Court decision as to whether it was applicable to the appellants.

In *United States v. Wells,* supra, 430 F.2d 225, the decision hinged on the question of waiver and the court found under the principles of *Brady v. United States,* supra, that it could not hold as a matter of law that defendant was counseled as were the defendants in *Brady, Parker* and *McMann.*

These decisions are not dispositive of the precise issues presented here.

The focus of the inquiry is on the nature of any advice and the voluntariness of the plea, and not on the existence of an antecedent constitutional infirmity.

Under these principles we are convinced there is no abuse of discretion in overruling the appellant's motion to withdraw his plea.

In *Tollett v. Henderson,* supra, which distinguished the trilogy, respondent confessed and pleaded guilty to murder. He sought habeas corpus some years later alleging that he was deprived of his constitutional rights because "Negroes had been excluded from the grand jury which indicted him." The issue upon which the lower federal court proceeded was whether his failure to object to the indictment constituted a waiver of his constitutional rights. The Supreme Court of the United States held that:

" . . . a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise [unknown] independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." [14] *Tollett v. Henderson,* supra, 93 S.Ct. at 1608. (Emphasis in original).

In effect, the court held that it was not sufficient to show a constitutional infirmity (the unconstitutionally selected grand jury), but the movant must also show that an attorney's advice to plead guilty was such outside the range of competence demanded of attorneys in criminal cases.

In *McMann,* supra, the issue facing the court was whether, after conviction on a plea of guilty, a defendant is entitled to relief when it is alleged that a confession was coerced and that the coerced confession

motivated the plea. The Court in *McMann,* supra, held that if a movant proves no more than this [the confession was in fact coerced] he is not entitled to relief. In *McMann,* the court dealt with a confession which is deemed crucial to the State's case and held that a plea is an intelligent one and is not open to attack on the ground that counsel may have misjudged its admissibility.

" . . . Whether a plea of guilty is unintelligent and therefore vulnerable when motivated by a confession erroneously thought admissible in evidence depends on an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases. . . ." *McMann v. Richardson,* supra, 90 S.Ct. at 1448–1449.

■ The thrust of these authorities, therefore, is that, while a constitutional violation, unknown to an accused, is not "waived" upon the entry of a guilty plea, independent claims relating to the deprivation of constitutional rights that occurred prior to the plea may not be raised. Only the voluntary and intelligent character of the plea may be challenged by showing that the advice the accused received from counsel is not within the standards of competence. *Tollett v. Henderson,* supra, 93 S.Ct. at 1608.

■ We cannot conclude from the facts here that counsel's advice to plead guilty, if in fact he did so advise for the record does not clearly so indicate, was outside the range of competence demanded of attorneys in criminal cases. The ultimate test is whether the efforts and representations of the attorney have reached a level of adequacy so that an accused has been given such adequacy of representation that the plea is voluntarily and understandingly made. The burden is upon movant to show

---

**14.** *If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not within the range of competence de-* manded of attorneys in criminal cases. *McMann v. Richardson,* supra, 90 S.Ct. at 1449.

such inadequacy. The mere failure to locate O'Connor prior to the motion to suppress does not constitute ineffectiveness of counsel. There is no showing that the assistance of counsel was not " '. . . within the range of competence demanded of attorneys in criminal cases. . . .' " *Tollett v. Henderson*, supra, 93 S.Ct. at 1608. There is nothing in the record to indicate that appellant was not properly counseled concerning his plea of guilty.

■ We deal here with a guilty plea. A guilty plea represents, as stated in *Tollett v. Henderson*, supra, 93 S.Ct. at 1608, ". . . a break in the chain of events which has preceded it in the criminal process. . . ." Once a guilty plea is entered, the determination of adequacy of representation of counsel becomes immaterial except to the extent that counsel's ineffectiveness bears on the issue of voluntariness and understanding of the plea. *Hall v. State*, 496 S.W.2d 300, 303 (Mo.App.1973).

■ Neither can we conclude that the unawareness of the existence of O'Connor and the unawareness of the existence of the corroborating facts that appellant was suffering from withdrawal symptoms would have rendered any confession constitutionally inadmissible on the motion to suppress the statement or would have tipped the scales so that the trial court hearing the motion may have sustained the motion to suppress. The same trial judge heard both the motion to suppress statements and the motion to withdraw the plea. Even if O'Connor had testified at the hearing on the motion to suppress and corroborated the testimony of Nielsen, there was substantial evidence for the same trial court who heard both the motion to suppress and the motion to withdraw to overrule the motion to suppress and in effect conclude that the statement or confession was not involuntary.

This case, therefore, is distinguishable from *United States v. Myers*, 451 F.2d 402 (9th Cir. 1972) and *Alewine v. State of Missouri*, 352 F.Supp. 1190 (W.D.Mo.1972) relied upon by appellant.

In *Myers* it was held that where defendant was unaware of the fact that his federal sentence would not begin until his state sentence was served it was necessary for the trial court, which was aware of such fact, to inform defendant so that a plea would be voluntary.

In *Alewine* the court held that the defendant was entitled to a post-trial evidentiary hearing on the issue of the voluntariness of a confession where the sheriff testified at trial that interrogation continued after defendant requested the service of an attorney.

■ Furthermore, assuming that the trial court had sustained the motion to suppress a statement concerning the killing of Mr. Besel, the inadmissibility of the confession, which may have motivated his plea of guilty, without more would not entitle appellant to relief—to withdraw his plea. *McMann*, supra. As in *McMann*, supra, a defendant who alleges that he pleaded guilty because of an inadmissible confession is not, without more, entitled to relief. *State v. Grimm*, 461 S.W.2d 746, 752 (Mo. 1971).

■ The voluntariness of the plea of guilty here did not rise or fall on the absence or presence of O'Connor's corroborative later discovered testimony about withdrawal. The plea proceeding was extensive; movant detailed the events of the killing of his father-in-law; he was not under the influence of any foreign substances at the time of his plea; he was informed of all of his rights, the nature of the charge and the punishment which would be imposed. There were no threats or promises inducing the plea. The plea was voluntary. *Baker v. State*, 524 S.W.2d 144, 147 (Mo.App.1975). In determining the voluntariness and understanding with which a guilty plea is entered, the effect that the confession has on the guilty plea is only one factor among many that should be considered. *Christian v. State*, 509 S.W.2d 783, 784 (Mo.App.1974). Unawareness of certain facts at the time of a plea does not necessarily render the plea unintelligent or involuntary. *Cf. State v. Harris*, supra, 420

S.W.2d at 330; *State v. Hodges*, 383 S.W.2d 551, 553 (Mo.1964).

Under all the circumstances, therefore, we cannot conclude that the unawareness of O'Connor's testimony which corroborated Nielsen's testimony at the hearing on the motion to suppress amounted to ineffectiveness of counsel or rendered the subsequent plea of guilty unintelligent. Thus, we hold that the trial court did not err or abuse its discretion in overruling the motion to withdraw the plea of guilty. We therefore are compelled to affirm the order.

We have read the various transcripts, we have examined all the authorities relied upon by the appellant, we have made our own independent search of other authorities, and we conclude that there is no error.

The order overruling the motion to withdraw the plea of guilty is affirmed.

KELLY, P. J., and GUNN, J., concur.