**STATE of Missouri, Respondent,**

v.

**James Elmer HARRIS, Appellant.**

No. 52326.

Supreme Court of Missouri,

Division No. 2.

Nov. 13, 1967.

Norman H. Anderson, Atty. Gen., Moody Mansur, Asst. Atty. Gen., Jefferson City, for respondent.

Scherck & Healy, Roger L. Scherck, John C. Healy, St. Louis, for appellant.

EAGER, Judge.

Defendant was charged by amended information on March 4, 1966, with second degree burglary and stealing, and with the conviction of a prior felony, with a parole. The original information had been filed on February 4, 1966, and an attorney appointed on February 10th. The burglary charged was an entry into the residence of one Rose Henry, and the stealing charged was of a "stereo phonograph." The present appeal arises from a sentence imposed upon the denial of a motion asking leave to withdraw a plea of guilty. No motion for new trial was filed, but the motion to withdraw the plea was filed before judgment and sentence and we shall deal with the case on the merits. In the light of this issue we shall need to recite the record in considerable detail.

On April 6, 1966, defendant appeared with an associate of his appointed attorney who announced that defendant wished to withdraw his plea of not guilty and enter a plea

of guilty. Upon inquiry by the Court the Assistant Circuit Attorney stated the supposed facts, substantially as charged in the information, and expressly stated then that the State recommended a sentence of three years on the burglary charge and three years on the stealing, to run concurrently. The Court asked defendant if what the State's Attorney had said was true and defendant said, "Yes, sir"; he also asked defendant if he was guilty of burglary and stealing and he again said, "Yes, sir." At the instance of defendant's counsel, who apparently had not heard everything, both inquiries were repeated and defendant again answered affirmatively. The defendant also stated, by affirmative answers, that he had discussed the matter with his attorney "completely and thoroughly" and that he had authorized his attorney to enter a plea of guilty on both elements of the charge; he affirmed again that he had committed the burglary, that he was satisfied with his attorney's advice, and stated that he understood "what it means" to plead guilty to second degree burglary; allocution was granted but, upon request of defendant's counsel, sentence for the burglary was deferred pending a pre-sentence investigation. Upon further questioning by the Court, defendant affirmed his guilt of the offense of stealing, and stated that his attorney had explained fully what it meant to plead guilty to that offense. To that particular question, after his answer of "Yes, sir," he added, "I guess so." Sentence was also deferred on the stealing charge, after pleas of guilty had been accepted to both burglary and stealing.

On May 16, 1966, defendant, by counsel filed his motion to "strike" his plea of guilty and to enter a plea of not guilty; as grounds he stated that he was "unaware that the fact that he entered the premises with the consent of the *plaintiff* * * *" had any bearing on the questions and might exonerate him, and so kept quiet, and that he had not advised his counsel that he had "done the alleged act with the consent of the prosecuting witness * * *."

At a hearing set for May 18, 1966, defendant appeared with Mr. Scherck, his appointed attorney, who stated that his associate, Mr. Oberhellmann, had been handling the matter, and that the latter had told him of inconsistent statements made by the defendant. At that point the Court read to defendant and his counsel from a transcript substantially all of the discussion questions and answers which had transpired when the pleas of guilty were made and accepted; the Court further stated, in·the record, that it had on May 11, received a letter from the defendant asking for a parole because of "family problems," and that it now noted with interest defendant's present claim of "consent." Further colloquy ensued, consisting largely of what defendant had supposedly told Mr. Oberhellmann, including the fact that defendant had broken down a door, but claimed that he did so in order to "get back his own property." In the course of that colloquy Mr. Scherck said: "You don't break down the door with consent, that's true," and the Court noted: "It's hard to believe," and further: "Well, he has been, I believe, something less than completely frank with all of us in this matter. I believe he understood exactly what he was doing on the 6th of April. He said he did. He was well represented. If you have anything further that you would like to say, but I wanted you to be aware of the transcript * * *." The motion was then argued briefly, partially on facts assumed by counsel, and defendant was sworn as a witness; Mr. Scherck explained that he was there because Mr. Oberhellmann was ill. The Court asked defendant if it was satisfactory with him to proceed in the absence of Mr. Oberhellmann, who might know more about his case, and defendant indicated that he preferred to wait for Mr. Oberhellmann. The hearing was then continued for that reason and at defendant's request.

On June 1, 1966, the hearing was resumed, with both Mr. Scherck and Mr. Oberhellmann present. Counsel suggested that the State's attorney had previously indicated orally that defendant could with-

draw his plea, but had later stated the contrary. The assistant in question, he being called in, stated for the record that he had merely said that defendant might file such a motion, and that if it was sustained the State would try the case and seek the maximum penalty; that he felt that the plea was voluntary and proper in all respects, and that he had never consented to a setting aside of the plea. Counsel for defendant then stated that the prosecuting witness was present and that she had "been down here three times trying to drop these charges." He also suggested to the Court, very vaguely, certain supposed constitutional infringements which are not pursued here. The State's attorney replied that defendant had written to the prosecuting witness asking her to drop the charges. The Court indicated that it would hear any evidence which the defendant chose to offer. These various colloquies, while not given under oath, appear to have received consideration from all concerned.

■ The defendant did not testify at the hearing on his motion; we note this because the hearing was not a trial before a jury in which his failure to testify may not be considered, but it was one before the Court upon a motion on which he had the burden of proof. Mrs. Rose Henry was the only witness produced; it was obviously her house which had been entered, but she gave no details whatever nor was she asked for any. The substance of her testimony was: that her daughter was defendant's "girl friend," that she had a baby by him, and that defendant was "like a son of mine. He was welcome to the house at all times." Objections were sustained to proffered testimony concerning her effort to drop the charges, this on the ground that the State was prosecuting the charge, not the witness. The only evidence given concerning any sort of permission was: "Mrs. Henry, could you then tell the Court—Did you ever give permission to this defendant to come in your home? Did he have access to your home? A Why, sure, I gave him permission to come in." To this an objec-

tion (made after the answer) was sustained on the ground that the giving of permission "at any time" was not material on the issue of voluntariness of the plea of guilty. She was never asked whether defendant had permission to enter at the time in question, or whether he was ever given permission to break down a door. The witness testified also that *she* owned a "hi-fi stereo," stating specifically: "I own it." In the next answer she said that she gave it to her daughter, and that it was *"supposed"* to have been "swapped" in the "girl friend and boy friend." That was all of the testimony produced. It seems obvious that such evidence did not establish any consent to a breaking and entering, nor did it establish in defendant any ownership of the stereo. The motion was taken under advisement and it was overruled on June 10, 1966; at that time defendant was present with his counsel, allocution was granted on each charge, and he was sentenced to concurrent terms of three years on each charge following such a recommendation by the State. The request for probation was denied. After some discussion of defendant's prior offense and the dates of probation therefor, an allowance was made for defendant's "jail-time."

The sole point made here by defendant is that the Court failed "to use the proper judicial procedures" in the acceptance of the plea of guilty in that it failed to "bring to light" a valid and legal defense to the charges, and thus permitted defendant to waive "inadvertently" his right to a trial. More specifically, counsel say: that the Court did not explain the charges to defendant or "inform him of the requirements for guilt," and that it did not explain the consequences of the plea. In substance, the argument seems to hinge on the failure, or supposed failure, of the Court to bring out affirmatively the now-advanced theory of "consent." Counsel quote briefly from the proceedings at the hearings which we have already related, but they omit much. They cite our Rule 25.04, V.A.M.R., which requires the Court to determine that a plea of

guilty is made "voluntarily with understanding of the nature of the charge."

The principles involved are rather firmly fixed in our Missouri cases, some of which are cited and discussed in defendant's brief. In State v. Williams, Banc, Mo., 361 S.W.2d 772, the Court noted that a plea of guilty should be received with caution, and only if it is freely and voluntarily made; and that if the defendant has been misled or has been induced to plead guilty by fraud, mistake, misapprehension, etc., he should be permitted to withdraw the plea. In Williams, there were unusual and exaggerated facts. Defendant, charged with forcible rape, had entered an equivocal plea of guilty through appointed counsel, who had made a considerable investigation but nevertheless stated concurrently to the Court that they were not convinced of defendant's guilt, and that defendant had told them with regard to his guilt,—"I don't know," it being further stated that he had supposedly taken "dope of some sort" previously. Upon accepting the plea the Court promptly sentenced the defendant to death, after merely asking defendant's counsel if he had "explained to the defendant the possibilities of punishment * * *." Defendant was asked nothing. Upon a motion to withdraw the plea defendant's counsel offered to prove: that the prosecutor had for some weeks insisted upon a life sentence upon a plea of guilty; that at a conference of the Court, the prosecutor, and other persons unknown, a few days prior to entry of the plea (but wholly unknown to defendant's counsel) the Court had stated that upon a plea of guilty it might impose the death sentence; that three days prior to the plea the prosecutor had advised defendant's counsel, contrary to his prior insistence, that he would withdraw the habitual criminal charge and permit a plea without making any recommendation, and that he did thereafter, pursuant to that suggestion, withdraw the charge of a prior conviction. The Court *refused to hear any evidence* on the motion to withdraw the plea. This Court held on the appeal that, the plea

being equivocal, the Court should have entered a plea of not guilty. Rule 25.04. It further held that the defendant and his counsel might reasonably have been misled by the action of the prosecutor, and that the withdrawal of the plea should have been permitted. In effect, this Court found that they were misled. The facts of that case are wholly unlike ours, and we have no question whatever as to the propriety of that decision.

In State v. Blaylock, Mo., 394 S.W.2d 364, the defendant obviously thought that he had engaged the services of the attorney of his choice, and he had made a substantial deposit on the required fee; the attorney had interviewed him twice. This attorney did not appear at the time of trial (apparently because the balance of the fee was not paid) and defendant, represented then by the Office of the Public Defender, entered a plea of guilty to a charge of first degree murder. The latter attorney, Mr. Noskay, testified in the subsequent proceedings: that he had told defendant that his chosen counsel would no longer represent him, that defendant then made no response, and that defendant accepted his advice to enter a plea of guilty; also, that he explained to defendant the "ramifications" of such a plea and the possible penalties and that he was satisfied that defendant then understood its meaning. At the hearing on defendant's motion the defendant denied such conversations, generally, and he stated that Mr. Noskay never discussed the facts of the crime with him. At the time of the plea there the Court had asked the State's attorney for his version of the facts, and thereafter had merely said to the defendant: "You did do this, did you?" to which the defendant answered "Yes." The plea was accepted and a life sentence imposed. The appeal there was from an order denying a subsequent motion to vacate the sentence. On appeal, the Court noted that only one leading question had been asked of defendant at the time the plea was accepted, with no inquiry of his attorney, and that the facts stated by the State's attorney did not

necessarily compel a finding of guilt of first degree murder. It concluded that, under the circumstances, there should have been an inquiry into the voluntariness and the understanding (by defendant) of the plea. Those facts, also, are substantially different and much more compelling than ours.

In State v. Arnold, Mo., 419 S.W.2d 59, decided October 9, 1967, the Court followed, generally, the decision in Blaylock, supra, and reversed for failure to sustain a similar motion; there the plea of guilty had been accepted despite the fact that the defendant stated at the time that "he didn't know anything about" the commission of the alleged crime. It was held that there was not a sufficient inquiry concerning the voluntariness of the plea or defendant's understanding of the consequences of the plea, nor was the range of punishment explained. A reading of the opinion will show that there was substantially no inquiry made of defendant on the questions held to be vital under our decisions, and that, in fact, the plea was equivocal. The Court also held that the mere presence of an attorney at the time of a plea did not relieve the Court of its duty of inquiry.

In State v. Hovis, 353 Mo. 602, 183 S.W. 2d 147, it was held that such a motion should have been sustained because defendant was misled, although not intentionally, by his numerous conversations with the prosecutor concerning the probability of a parole. We do not have such a situation here.

The principles involved are well settled by our Rule and our decided cases, and we see no need to discuss the federal cases cited. Counsel for defendant are charging the trial court, in effect, with the failure to develop a supposed defense to a crime. Counsel had been appointed for defendant more than two months before the plea was entered; at the final hearing on the motion (about two months after the plea) defendant did not see fit to testify. The testimony of the mother of his "girl friend" was insufficient to show her "*consent*" to the breaking of the door and the taking of the stereo, nor did it show any ownership in defendant; moreover, the credibility of that witness, in the light of all the circumstances, was for the trial court. Obviously, defendant did not convince the trial court that the supposed defense was meritorious or that he had any valid defense.

We revert to a brief review of the proceedings at the time of the plea. So far as concerns any claim of failure to explain the range of punishment, we note that the Assistant State's Attorney stated at the very outset that the State was recommending two sentences of three years each, to run concurrently; thereafter there could have been no doubt in the mind of any defendant that he might receive that sentence, and *that* is just what defendant eventually received. That point is totally without merit. Going further, the Court (in the presence of the attorney whom defendant said he preferred) called for a statement of the facts; defendant heard these stated in plain language, i. e., "broke into a dwelling house * * * and stole a stereo." There could hardly have been a clearer explanation of the meaning of these particular charges; and almost anyone knows what "stealing" means. Defendant affirmed to the Court that the *facts stated* (not the formal information) by the prosecutor were true, in addition to his statement made twice that he was guilty of the offenses of burglary and stealing; he was asked if he had discussed the matter thoroughly and completely with his attorney, if he was satisfied with the attorney's advice, and if he had authorized the plea. To all of this he replied "Yes, sir." Defendant further stated that he understood what it meant to plead guilty to burglary, and to stealing. In the light of all this, we do not consider that the words "I guess so," added after defendant stated affirmatively that he understood what it meant to plead guilty to the offense of stealing, detracted materially from the showing of his full understanding of the whole proceeding. There were *no* circum-

stances here to constitute a possible misleading of the defendant, intentional or inadvertent; there were no promises and no possible coercion; there was no discussion of a parole; and, while the presence of an attorney does not exclude the necessity for an inquiry, we think that the Court may reasonably assume, in the absence of evidence to the contrary, that the attorney has explained to a defendant the basic elements of the offense. In our opinion the defendant could not have failed to understand the consequences of his plea. Nor are there any facts to indicate that the plea was involuntary. There was at least a fair inference that the idea of "consent" was an afterthought, coupled with a fruitless effort to have the charges dismissed after they were fairly and legitimately filed.

We hold that the Court acted within its discretionary power in overruling the motion. Defendant was given two hearings with the opportunity to present any and all desired evidence; he was represented by counsel. It was not necessary for the Court to make findings of fact and conclusions of law for this was a motion filed and heard before judgment and sentence, and not a motion to vacate under Rule 27.26 as amended. The facts in this case are somewhat analogous to those in State v. Hodges, Mo., 383 S.W.2d 551, where the Court affirmed the action of the trial court in denying a similar motion. There the inquiries were rather similar to those in the present case, and the defendant also claimed ("belatedly," as here) that he "had a misconception of the law and the nature of the charge * * *." There the Court concluded, loc. cit. 554: "Upon this record we are convinced that defendant voluntarily and understandingly entered such plea. Therefore, there was no abuse of discretion by the trial court in denying defendant's motion." We have no statute which gives a defendant the right to withdraw a plea of guilty, even before sentence, and the ruling upon such a motion under the present circumstances lies solely within the discretion of the trial court, absent abuse. State v.

Kellar, 332 Mo. 62, 55 S.W.2d 969; State v. Skaggs, Mo., 248 S.W.2d 635.

We are convinced here that the plea of guilty was made "voluntarily with understanding of the nature of the charge," within our Rule 25.04, and that there was no error in the overruling of defendant's motion to withdraw the plea.

The judgment is affirmed.

All of the Judges concur.