**William H. LATHAM, Appellant,**

v.

**STATE of Missouri, Respondent.**
**No. 54041.**

Supreme Court of Missouri,

Division No. 1.

April 14, 1969.

Edgar M. Eagan, Jefferson City, of counsel, for appellant.

Norman H. Anderson, Atty. Gen., O. Hampton Stevens, Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Commissioner.

This is an appeal from an order denying a motion by William H. Latham under Criminal Rule 27.26, V.A.M.R. to vacate and set aside a judgment and sentence.

Charged with burglary, second degree, § 560.070, RSMo 1959, and stealing, defendant pleaded guilty on March 1, 1968, to burglary, and was sentenced to five years' imprisonment. The state dismissed the stealing charge.

On May 16, 1968 appellant filed this motion to vacate, stating as grounds therefor that the plea of guilty "was illegally induced by coercion, promises, fear, inadvertence, and unfairly obtained, and thus involuntary, and most inconsistent with due process of law, and void"; that he was indirectly informed that his two stepsons would be sent to prison unless he first entered a plea of guilty, and that if he did so his stepsons would be released on probation on a misdemeanor charge, reduced from a felony charge, and that although not guilty he entered the guilty plea for fear of the danger and harm a criminal record and

imprisonment could do to his stepsons; that movant was innocent of the charge of burglary; and that he was wrongfully sentenced to a felony conviction for five years for burglary of a building which was a schoolhouse, under § 560.070, RSMo 1959, whereas he should have been charged with trespass upon school property, only a misdemeanor under § 560.465.

Two attorneys were appointed to represent him at the hearing of the motion to vacate. One of the stepsons testified and the other's affidavit was accepted as the testimony which he would have given if present. Their testimony indicated that they broke into a schoolhouse and removed therefrom a quantity of soybeans; that just the two boys broke into the schoolhouse and did the stealing and that the stepfather was not involved; that the two boys and appellant later sold the beans, using appellant's truck in transporting them; that the boys had told appellant that they bought the beans; that the three were arrested and charged with burglary and stealing; that the sheriff told the boys that if their stepfather would enter a plea of guilty the boys would be released on the lesser charge of destruction of private property; that the stepfather entered his plea of guilty and the prosecuting attorney then reduced the charge against the boys to destruction of private property; that the boys pleaded guilty thereto and were sentenced to one year in jail, with two years' probation.

Appellant testified that he had a conversation with the sheriff; that he tried to get the sheriff to let the boys out because appellant's wife was about eight miles out in the country and was destitute and had to have someone out there with her; that that was his main concern; that the sheriff told him that he should think of his boys first; that the sheriff would recommend probation; that whether Latham pleaded guilty or not he "was to go through a trial on it"; that if he went ahead and pleaded guilty "right now" the boys "could get off free" (on parole). He assumed that the sheriff

had talked with the prosecuting attorney. He asked his attorney to speak to the prosecuting attorney and see if the latter would be willing to reduce the charges as to the stepsons if appellant entered a plea of guilty; that he had fear for his boys; that he considered that the reduction of the charges against the boys "was just the same as turning them free," and that was what he "was after"; that he did not "know what rights he had." Appellant's criminal record was brought to his attention, and he admitted a long series of convictions and incarcerations in various penitentiaries. The transcript of the hearing at which appellant pleaded guilty was read to appellant, and he agreed that the events therein recited happened as reported and had no corrections to make in the transcript. It showed that appellant was represented by an attorney, who was present; that his attorney stated that he had talked to appellant "and he wants to plead"; that the judge informed appellant that he had a right to a jury trial, to be confronted by witnesses and an opportunity to cross-examine them; that he was presumed to be innocent until proved guilty beyond a reasonable doubt; that appellant pleaded guilty as charged, after having the information read to him. The court asked if he was pleading guilty because he was in fact guilty, and appellant answered "I am the one, yes, sir." Again the court asked, "You are in fact guilty?" and appellant answered, "Yes, sir."

At the conclusion of the hearing the judge found that movant "failed to sustain the burden entitling him to any affirmative relief by his motion for review"; that the plea of guilty was entered voluntarily and knowledgeably; that there was no coercion; that movant did not enter the plea in ignorance, fear or through inadvertence, and that considering defendant's long criminal record the sentence was not excessive. Movant appealed.

The question is whether the circuit court abused its discretion in denying the motion to withdraw the plea of guilty

and in determining that the plea was made "voluntarily with understanding of the nature of the charge." Criminal Rule 25.04. We remind ourselves that a plea of guilty should be received with caution, and only if freely and voluntarily made; that if the defendant has been misled or induced to plead guilty by fraud, mistake, misapprehension, coercion, duress or fear, he should be permitted to withdraw the plea. State v. Harris, Mo.Sup., 420 S.W.2d 325.

■ On this review we find ample support for the trial court's finding that appellant's plea of guilty was freely and voluntarily made, fairly obtained and that appellant was not misled and no basis for appellant's claim that the plea was illegally obtained by coercion, promises, fear or inadvertence.

■ Appellant's principal point is that although he is innocent of the crime he was induced to plead guilty and "take the rap" himself because of the inducement held out by the sheriff that if appellant pleaded guilty the felony charges filed against his stepsons would be reduced to misdemeanors and that the stepsons would be granted probation upon pleading guilty, thereby releasing them to assist in caring for appellant's wife. Such a motivation is not a sufficient reason in law to invalidate a plea of guilty, where accused at the time of the plea was represented by competent counsel and the plea was otherwise voluntarily entered into.

In State v. Maloney, Mo.Sup., 434 S.W. 2d 487 (1968), movant testified that among several other inducements his mother implored him to plead guilty to several charges because if he did not do so and received a death sentence it "would kill" his grandmother; that she would commit suicide. On that phase of the case we ruled that "Appellant's mother may have encouraged the guilty pleas, but that was not legal coercion." 434 S.W.2d, l. c. 494.

In Kent v. United States, 1 Cir., 272 F.2d 795, 798 (1959), the court said: "Similarly, petitioner recites that his fiancee 'confessed' in writing, and orally acknowledged her confession to him, and that he was told she would be charged as an accessory. We are not prepared to say that it can be coercion to inform a defendant that someone close to him who is guilty of a crime will be brought to book if he does not plead. If a defendant elects to sacrifice himself for such motives, that is his choice, and he cannot reverse it after he is dissatisfied with his sentence, or with other subsequent developments. Cf. Brown v. United States, 5 Cir., 1953, 204 F.2d 298, 300–301, certiorari denied 1954, 346 U.S. 925, 74 S.Ct. 314, 98 L.Ed. 418. Indeed, a contrary ruling would mean that a defendant could equally say that he pleaded guilty to save himself. It is certainly not duress, if the promise is kept, for the government to say it will recommend a lighter sentence if a defendant pleads than it might recommend if he is convicted after trial. Yet, obviously, 'fear' of the greater sentence may induce a plea. Petitioner must show that he was subjected to threats or promises of illegitimate action. Statements that other guilty parties will be prosecuted if he does not plead are not of that description."

In Cortez v. United States, 9 Cir., 337 F. 2d 699 (1964), the court rejected the contention that a plea of guilty was "coerced" or "induced" by reason of a "deal" between the United States Attorney's office and defendant's counsel, whereby Cortez would plead guilty in "exchange" for his wife's being allowed to plead guilty to a lesser charge. Cortez claimed that he entered into this deal because of his wife's pregnancy, and to protect her. This was adjudged insufficient to vitiate the plea.

In United States ex rel. Robinson v. Fay, 2 Cir., 348 F.2d 705 (1965), one reason assigned by the prisoner for desiring to withdraw his plea of guilty was that "he was influenced by his lawyer's plea not to put [his accomplice's] neck in a noose." In referring to that factor the court said, l. c. 707: "If he was partly influenced [in en-

tering the plea of guilty] by a desire to help McCants also escape the chair it would not invalidate [defendant's] plea."

In United States ex rel. Cunningham v. Follette, 2 Cir., 397 F.2d 143 (1968), defendant was sitting at a table in a bar, next to a companion, one Barbara Davis, when he saw a narcotics agent enter the bar and look at him. Defendant immediately removed a brown paper bag from his person and placed it in Barbara's handbag. A search revealed the bag, which contained heroin. Charged with possession of narcotics, defendant entered a plea of guilty, and on the same day asked leave to withdraw the plea, which was denied. On appeal the judgment was affirmed. Commenting on the defendant's misapprehension that because he handed the paper bag to Barbara he did not have possession of the narcotics, the court went on to say, l. c. 146: "It may be that Cunningham was also influenced by a desire to help Miss Davis. But that would not invalidate the plea in a case in which he was represented by competent counsel, the plea was voluntarily made with no inducement by the court or the prosecutor and the state was ready to go ahead at the time of the plea, as was the case here. United States ex rel. Robinson v. Fay, 348 F.2d 705 (2d Cir. 1965), cert. denied, 382 U.S. 997, 86 S.Ct. 583, 15 L.Ed.2d 484 (1966). See also Kent v. United States, 272 F.2d 795 (1st Cir. 1959). We agree with Judge Murphy that no hearing was required on this aspect of the application for the writ."

In United States v. Carlino, 2 Cir., 400 F.2d 56, l. c. 58 (1968), on an application for a writ of error coram nobis alleging that a guilty plea was involuntarily made, the court said: "Judge Wyatt ruled that appellant's affidavit was insufficient to put the claim of coercion into issue. Nothing in Carlino's moving papers compels us to find otherwise. On this record, the allegation of an understanding that the charges against appellant's son would be dismissed did not, in itself, amount to a sufficient allegation of coercion. See United States

ex rel. Cunningham v. Follette, 397 F.2d 143 (2 Cir. 1968). In any event, even if the claimed understanding did exist, appellant neither misconstrued its terms nor misunderstood its immediate consequences. The understanding alleged was fully performed exactly as appellant expected. Its mere existence would in no way vitiate his otherwise knowing and voluntary plea. Cortez v. United States, 337 F.2d 699 (9 Cir. 1964), cert. denied, 381 U.S. 953, 85 S.Ct. 1811, 14 L.Ed.2d 726 (1965). See United States ex rel. Rosa v. Follette, 395 F.2d 721 (2 Cir. 1968); United States v. Cariola, 323 F.2d 180 (3 Cir. 1963)."

In State v. Hansen, 79 N.M. 203, 441 P. 2d 500, l. c. 504 (1968), the court said: "Even if we were to construe defendant's allegations as constituting a threat by someone in authority that charges would be filed against his wife, unless he pleaded guilty, and that he was thereby induced or influenced to so plead, still he would be entitled to no relief. Unless he knew his wife had committed some criminal offense, or at least he had substantial reason to believe she might be convicted of such an offense if so charged, he cannot be heard to say he was coerced into pleading guilty for fear she might be charged. If he knew she was guilty of some criminal offense, or had reason to believe she would be convicted of the offense if charged, and, to save her from being charged, he elected to plead guilty, and thus relieve the State of its burden to prove his guilt, he cannot now claim any right to a reversal of his conviction and sentence after having made this choice and after having become unhappy over his sentence or other subsequent developments."

In State v. Baumgardner, 79 N.M. 341, 443 P.2d 511 (1968), the court held insufficient an allegation in a motion to withdraw a plea of guilty that it was coerced because defendant was threatened with the filing of charges against his codefendant's 17-year-old wife if he did not plead guilty to the charge.

Appellant, represented at all stages of this case by competent counsel and thoroughly familiar with criminal processes (over a 30-year period appellant had been convicted of burglary and larceny in four states on seven separate criminal charges), has failed to meet the burden of proof, which is upon appellant, State v. Harris, supra, to demonstrate that he was misled, imposed upon or unfairly dealt with.

■ Nor was there error in refusing to vacate the judgment and sentence because appellant was improperly charged under the wrong statute. He was charged with burglary of "a certain storage building known as Harris Bend School * * * the property of the United States of America * * *." There is no showing that the storage building was a "building used as a schoolhouse" or for "educational purpose," within the meaning of § 560.465 (the trespass statute). Even if it was a building used as a schoolhouse, the offense interdicted by § 560.465 is that of injuring, defacing, destroying, marring, disfiguring or trespassing upon such premises, or removing the water in the well, etc. The crimes charged were those of burglary and stealing from the building. Section 560.-465 is no bar to a prosecution for burglary of and stealing from a building used as a schoolhouse.

On this record the court did not abuse its discretion in denying the motion to vacate and set aside the judgment and sentence.

The judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:
The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.