**STATE of Missouri, Respondent,**

v.

**Jerald W. THOMAS, Appellant.**

**No. WD 59995.**

Missouri Court of Appeals, Western District.

Dec. 17, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Jan. 28, 2003.

Application for Transfer Denied March 4, 2003.

David E. Fischer, Kansas City, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Philip M. Koppe, Assistant Attorney

General, Kansas City, MO, for Respondent.

Before: PAUL M. SPINDEN, P.J., PATRICIA A. BRECKENRIDGE and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Mr. Jerald W. Thomas appeals the judgment of the plea court, which, pursuant to his guilty plea to four counts of drug trafficking, sentenced him to serve an aggregate term of forty-five years incarceration.

## I. Factual and Procedural Background

On May 15, 2000, Mr. Thomas was charged by indictment in Lafayette County Circuit Court with four counts of distribution, delivery, or sale of a controlled substance in violation of § 195.211[1]. On July 10, 2000, the Lafayette County prosecuting attorney filed an information in lieu of indictment which added the allegations that Mr. Thomas was a "prior drug offender" under §§ 195.275, 195.285.1, 195.291.1 and also, that he was a "persistent drug offender" under §§ 195.275, 195.285.2, and 195.291.2.

On July 19, 2000, Mr. Thomas filed a motion for change of venue and change of judge. The motion was sustained and this matter was transferred to the Clay County Circuit Court.

Mr. Thomas withdrew his prior pleas of not guilty to the aforementioned charged crimes on February 9, 2001. He formally entered guilty pleas on all four counts. At the plea hearing, the State presented evidence that Mr. Thomas was a "prior drug offender," and the sentencing range on each count was ten to thirty years, or life imprisonment.

Finally, during the hearing, the plea agreement that Mr. Thomas had reached with the State was discussed. In this plea agreement, the State promised not to seek a finding that Mr. Thomas was a "persis-

tent drug offender," which would have required that the sentence be served without the possibility of parole. In addition, it was explained that, pursuant to the plea agreement, the State was going to recommend concurrent sentences on each of the four counts but would not request sentences of any particular length.

After the terms of the plea agreement were explained, the plea court stated for the record that "in this circuit there is also no such thing as a binding plea agreement" and that "the court is not bound by anything you all agree to." After this admonition, the plea court granted a brief recess to allow Mr. Thomas to consult with his attorney. When the hearing resumed, the plea court went back over the aforementioned terms of Mr. Thomas' guilty plea. Upon the plea court's satisfaction that Mr. Thomas understood all of these terms, it found that there was a factual basis to accept his guilty plea in light of the fact that it was knowingly and voluntarily entered into by him. At the conclusion of this hearing, the plea court made the finding that Mr. Thomas was a "prior drug offender," and, therefore, "the range of punishment is therefore enhanced."

On May 2, 2001, the parties reconvened in court for sentencing. After hearing arguments by the opposing parties, the court announced Mr. Thomas' sentence: twenty years for each count of Count I and II to run concurrently, and twenty-five years for each count of Count III and IV to run concurrently. However, Counts I and II were ordered to run *consecutively* with Counts III and IV, for an aggregate sentence of forty-five years.

Immediately after the sentence was handed down by the plea court, Mr. Thomas objected to the sentencing on the basis that it was his understanding that any

1. All statutory references are to RSMo 2000 unless otherwise indicated.

sentence imposed on the counts was to run concurrently based on the agreement reached with the prosecuting attorney. The plea court replied that it was not bound by such an agreement and that that fact was explained to Mr. Thomas orally before he entered his plea of guilty, and it was also explained in writing in a petition to enter a guilty plea. Mr. Thomas then made an oral motion to withdraw plea of guilty, which was denied by the court. On May 14, 2001, Mr. Thomas filed his [Notice of Appeal] in regard to his judgment and sentencing.

On or about May 15, 2001,[2] Mr. Thomas made a written motion to withdraw guilty plea under Rule 29.07(d),[3] raising similar arguments to those that he brought before the court in his oral motion. Citing Rule 24.02(d)(4), it was argued in the motion that the plea court failed to follow the Supreme Court rules in regard to entering guilty pleas by not allowing Mr. Thomas an opportunity to withdraw his guilty plea after the plea court rejected the plea agreement reached between him and the State. A hearing was held on this motion on May 30, 2001. On that same day, the court denied the motion to withdraw the guilty plea.

Mr. Thomas brings two points on appeal. In his first point, it is argued that the plea court erred in denying his motion to withdraw guilty plea because the court failed to follow Rule 24.02(d)(4) in accepting his plea of guilty "without first (1) informing Appellant of its intent to [deviate from the plea agreement], and (2) giving Appellant the opportunity to withdraw his guilty pleas." In the second point, he contends that the plea court erred in denying his motion to disqualify the judge and transfer the matter because of the court's alleged bias and prejudice.

The State brings a third point on appeal, alleging that this court does not have jurisdiction to hear Mr. Thomas' arguments. This alleged lack of jurisdiction is because the appeal was allegedly brought as a direct appeal, and the limited scope of arguments that can be heard in regard to a direct appeal of a guilty plea precludes Mr. Thomas from raising the arguments that he did in his brief before this court.

## II. STANDARD OF REVIEW

 The standard of review of the circuit court's denial of a Rule 29.07 motion was recently stated by this court in *State v. Ralston*, 41 S.W.3d 620, 621–22 (Mo.App. W.D.2001), as follows:

A defendant does not have an absolute right to withdraw a guilty plea. *State v. Mandel*, 837 S.W.2d 571, 573 (Mo.App. 1992). Such relief should be granted by a motion court only upon a showing that the relief of withdrawal of the plea is necessary to correct manifest injustice. *State v. Hasnan*, 806 S.W.2d 54, 55 (Mo. App.1991). In reviewing the denial of a motion to withdraw guilty plea pursuant to Rule 29.07, the reviewing court is to determine whether the trial court abused its discretion or was clearly erroneous. *Scroggins v. State*, 859 S.W.2d 704, 706 (Mo.App.1993). It is the burden of the defendant to prove by a preponderance of the evidence that the motion court erred. *Id.* at 706–07.

If appellant's plea of guilty was voluntary and was made with an understanding of the charges against him, there can be no manifest injustice inherent in the plea. *Winford v. State*, 485 S.W.2d 43,

---

**2.** The date stamp on the motion contained in the legal file is difficult to discern.

**3.** All rule references are to Missouri Rules of Civil Procedure (2002) unless otherwise indicated.

49 (Mo. banc 1972); *Scroggins,* 859 S.W.2d at 707. If a defendant is misled or induced to enter a plea of guilty by fraud, mistake, misapprehension, coercion, duress or fear, he or she should be permitted to withdraw the plea. *Latham v. State,* 439 S.W.2d 737, 739 (Mo. 1969); *Scroggins,* 859 S.W.2d at 707. "Unawareness of certain facts at the time of a plea does not necessarily render the plea unintelligent or involuntary." *Id.; State v. Nielsen,* 547 S.W.2d 153, 161 (Mo.App.1977).

*Id.* (quoting *State v. Pendleton,* 910 S.W.2d 268, 270 (Mo.App. W.D.1995)).

### III. Legal Analysis

■ At the outset of this appeal, we must address the State's argument that jurisdiction to hear the substance of Mr. Thomas' appeal is not proper before this court. It is the State's contention that Mr. Thomas failed to appeal the plea court's denial of his Rule 29.07(d) motion to withdraw his guilty plea, and, therefore, Mr. Thomas' appeal in this matter is restricted solely to those issues that may be brought in a direct appeal from the entry of a guilty plea. "In a direct appeal of a guilty plea, our review is restricted to the subject-matter jurisdiction of the trial court and the sufficiency of the information or indictment." *State v. Sharp,* 39 S.W.3d 70, 72 (Mo.App. E.D.2001) (citing *State v. Le-Page,* 536 S.W.2d 834, 835 (Mo.App. W.D. 1976)).

In making this argument, the State asserts that Mr. Thomas filed his notice of appeal in this matter on May 14, 2001, which was after the plea court handed down his sentence pursuant to his guilty plea on May 2, 2001. However, because this notice of appeal was filed *before* Mr. Thomas filed his Rule 29.07(d) motion on May 15, 2001, and before the plea court issued a written order denying the motion on May 30, 2001, it is contended that this notice is ineffective to appeal the denial of his Rule 29.07(d) motion. Moreover, the State demonstrates from the absence in the legal file, that Mr. Thomas failed to file an additional notice of appeal for the denial of his Rule 29.07(d) motion. Finally, the argument concludes, because Mr. Thomas' two points on appeal go beyond the limited scope of a direct appeal from the entry of a guilty plea, this court does not have jurisdiction to hear his appeal.

■ We find that Mr. Thomas' appeal was properly filed, and, therefore, we have jurisdiction to hear its merits. "A Rule 29.07(d) motion to revoke a guilty plea is a civil proceeding." *State v. Larson,* 79 S.W.3d 891, 893 (Mo. banc 2002) (citing *Brown v. State,* 66 S.W.3d 721, 724–25 (Mo. banc 2002)). Recently, the Supreme Court of Missouri reviewed the history of Rule 29.07 at length in *Brown* and concluded that "[w]hen the content of Rule 27.25 was moved to Rule 29.07(d) in 1980, motions under it continued to be treated *procedurally* as were motions filed under Rule 27.26." 66 S.W.3d at 725 (emphasis added). This is significant because "[m]otions under S.Ct. Rule 27.25 and 27.26 by a prisoner to withdraw a plea of guilty and set aside the judgment of conviction and sentence are in the nature of civil actions and the procedure before the trial court and *on appeal is governed by the rules of civil procedure insofar as they are applicable.*" *Id.* at 724–25 (emphasis added) (quoting *State v. Davis,* 438 S.W.2d 232, 234 (Mo.1969)). Accordingly, when reviewing the denial of a Rule 29.07 motion, we are required to follow civil rules of procedure, when applicable. *Id.*

Mr. Thomas' early filing of his notice of appeal does not rid this court of jurisdiction to hear the substance of his appeal. Rule 81.05(b) states as follows:

**Premature Filing of Appeal**

In any case in which a notice of appeal has been filed prematurely, such notice shall be considered as filed immediately after the time the judgment becomes final for the purpose of appeal.

Although it is true that Mr. Thomas filed his notice of appeal of the denial of his Rule 29.07 motion *before* the plea court issued its final judgment order in this regard on May 30, 2001, this premature filing is still effective to appeal its denial. *Id; see also Burleson v. Fleming,* 58 S.W.3d 599, 604 (Mo.App. W.D.2001); *White v. State,* 530 S.W.2d 444, 445 (Mo. App.1975) (finding that appeal of trial court's denial of motion to withdraw guilty plea was proper notwithstanding the fact that notice of appeal was premature because Rule 81.05(b) was the governing procedural rule).

Turning to Mr. Thomas' first point on appeal, it is contended that the plea court erred in denying Mr. Thomas' motion to withdraw his guilty plea because the court failed to follow Rule 24.02(d)(4) in accepting his guilty plea. Rule 24.02(d)(4) states as follows:

*Rejection of a Plea Agreement.* If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea, the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

In interpreting Rule 24.02(d)(4), the Supreme Court of Missouri stated the following in *Schellert v. State:*

Though the court is not bound by the plea bargain between the prosecutor and the defendant and/or his attorney, if the court does not intend to follow the prosecutor's recommendation, the defendant should have the privilege of withdrawing his plea.... If the court rejects the plea agreement, either at the time of the plea proceedings or at the time of sentencing, the court shall, on the record, inform the parties of that fact, advise the defendant personally in open court, or on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity then to withdraw his plea, and advise the defendant that if he persists in his guilty plea, the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

569 S.W.2d 735, 739 (Mo. banc 1978).

This right to withdraw one's guilty plea, as set forth in Rule 24.02(d)(4) and *Schellert,* was also discussed by this court. In *Harrison v. State,* we found a distinction in types of plea negotiations and their role in pleading guilty; that "there is a difference between a true plea agreement and a non-binding recommendation, and that difference involves the issue of whether the agreement includes a genuine sentence concession." 903 S.W.2d 206, 208 (Mo. App. W.D.1995). Moreover, in making this distinction, it was reasoned that "if, in *Schellert,* the record had shown that defendant had clearly understood that the prosecutor's offer was that if the defendant would plead guilty, the prosecution would make a *non-binding* recommendation to the court [ ], but that the court would be free to impose 'hard time' of whatever sentence it felt appropriate ... the result of the case presumably would have been different." *Id.* Such a scenario would be distinct because "the defendant had not

negotiated a true 'sentence concession' . . . but instead had negotiated a mere non-binding [sentence] recommendation." *Id.*

However, in following the mandates of Rule 24.02(d)(4) and *Schellert*, this court held that "unless it is *clear* that defendant understood the effect of the discussions with the prosecution as involving a mere non-binding recommendation, then it is plain error to deny defendant an opportunity to withdraw his plea when the court is going to reject the plea agreement." *Id.* at 209. In announcing this rule, we placed significant emphasis on the role of the prosecutor to inform the defendant of the non-binding nature of plea agreement, and on the defendant's objective knowledge of the type of plea he was entering. *Id.* This is because "[i]n *Schellert*, the plea court had told the defendant that *it* viewed the defendant's agreement as involving only a non-binding recommendation, but the record failed to show that the defendant had, prior to pleading, understood the agreement that way, particularly in view of how the agreement was articulated by the prosecutor at the time of the plea." *Id.*[4]

In arguing that Mr. Thomas' point on appeal should be denied, the State attempts to analogize today's case to a host of this court's case law, including *Harrison*, where we ultimately found that the trial court did not err in refusing the defendant an opportunity to withdraw his guilty plea after the trial court ruled that it would not follow the plea agreement the defendant had reached with the State. *Id.; Comstock v. State,* 68 S.W.3d 561 (Mo. App. W.D.2001); *Stufflebean v. State,* 986 S.W.2d 189 (Mo.App. W.D.1999). However, the aforementioned cases are all distinct in one specific and critical regard: there was evidence in each case that the

defendant understood the meaning of a "non-binding" plea agreement, or at least had the meaning explained to him in open court. *Id.* To repeat, the meaning of a "non-binding" plea agreement is "that the court does not have to allow defendant to withdraw the plea even though the court is not planning to follow the prosecutor's recommendation." *Harrison,* 903 S.W.2d at 209 n. 2.

In *Harrison,* we held that the motion court did not err in denying defendant's post-conviction relief motion; however, the circumstances of that case were vastly different than our case today. *Id.* at 211. During the guilty plea hearing in *Harrison,* all the parties present (the defendant's attorney, the prosecutor, and the judge) specifically referred to the plea agreement as "non-binding." This can be seen in the trial transcript, which we italicized for emphasis in quoting the following passages in our opinion:

> [Defense Counsel]: And in CR190–502F, the defendant would enter a plea of guilty as charged. In CR190–2214F, the defendant would plead to Count I. And at the time of sentencing, Counts II and III will be dismissed. In CR190–1892F, the State would amend to a class "D" felony. And the defendant would enter a plea of guilty to that offense. And further, that the State would make a non-binding recommendation for concurrent sentences.
>
> [The Court]: All right. Now then, Mr. Prosecutor, that is the plea agreement as you understand it to be?
>
> [Prosecutor]: Yes, your honor. There is a non-binding recommendation to the court from the State for concurrent time in all four matters.

---

4. Of additional note in *Harrison,* the term "non-binding" was defined to mean "simply that the court does not have to allow defen-

dant to withdraw the plea even though the court is not planning to follow the prosecutor's recommendation." *Id.* at 209 n. 2.

But perhaps the most critical part of this hearing in *Harrison* was the dialogue that occurred between the defendant and the trial court, which was as follows:

[The Court]: And do you understand the plea agreement that your attorney just talked about?

[Defendant]: Yes, sir.

[The Court]: And are you satisfied with that?

[Defendant]: Yes, sir.

[The Court]: Do you want the court to accept that?

[Defendant]: Yes, sir.

[The Court]: And do you know what it means when she says it is a non-binding recommendation for concurrent terms?

[Defendant]: I, Yeah, I do.

[The Court]: Well, concurrent means they all run together.

[Defendant]: Right.

[The Court]: And when we say non-binding recommendation, that means that the court can, does not have to accept the recommendation. And if I don't, if I don't accept that recommendation, then you will have no recourse at all. You will not be permitted to withdraw your plea. Do you understand that?

[Defendant]: Yes, sir.

[The Court]: Knowing all of that, do you still want to proceed under this plea agreement here today?

[Defendant]: Yes, Sir.

*Id.* at 209–10.

This record was critical to our conclusion that the defendant in *Harrison* made a knowing and intelligent plea because we held that the defendant understood the ramifications of entering a "non-binding" plea agreement. *Id.* at 210. This fact can be seen in the following passage from *Harrison:*

In this case, defendant was represented by counsel, and defendant's own counsel articulated the agreement as involving the dismissal of certain counts in return for a guilty plea and then stated also "that the state would make a *non-binding recommendation* for concurrent sentences." The prosecutor also referred to a "non-binding recommendation to the court" for concurrent time in all four matters. In questioning, the court then made sure that it was clear what was understood by the term "non-binding." Consequently, we see this case as distinguishable from *Schellert.* . . . [T]he court rejected only the non-binding recommendation, which everyone understood the court was free to do without having to allow defendant to withdraw her plea. We hold that in this case the plea court did not reject the plea agreement, and therefore there was no violation of Rule 24.02(d)(4) or *Schellert.*

*Id.* at 210–11.

The other two cases the State cites to support the trial court's ruling are also factually distinct from our case. In *Comstock*, in rejecting the defendant's appeal of his guilty plea, we also found, after reviewing the proceedings as a whole, "that the record makes clear that Comstock understood very well that the State's recommendation was not binding on the trial court." 68 S.W.3d at 565. In coming to this conclusion, we reviewed and quoted several passages from the defendant's plea hearing, sentencing hearing, and post-conviction relief hearing. *Id.* at 562–64. All of this testimony illustrated that the defendant understood the meaning of entering into a "non-binding" plea agreement. *Id.* For example, at the sentencing hearing, the following discourse occurred between the court and the defendant:

[The Court]: Do you understand that if the Court does not follow that recom-

mendation, you would not be allowed to withdraw your plea of guilty?

[Comstock]: Yes, sir.

*Id.* at 563.

And at his post-conviction relief hearing, the defendant expressly stated that he understood the nature of his "non-binding" plea:

Q. [The State]: Mr. Comstock, Mr. Wilkinson advised you that the Judge did not have to honor the plea offer, is that correct?

A. [Comstock]: Yes, he did.

Q. And you were aware of that when you went in there, is that right?

A. Yes.

Q. And you were aware of that at the time the Judge was about to pronounce sentencing, as well, is that right?

A. That's right.

Q. And the Judge went through it with you and told you that if he would sentence you above or below, you would not be allowed to withdraw your plea; and notwithstanding that, you went ahead and entered a plea; correct?

A. That's right.

Q. And the Judge went through it with you and told you that if he would sentence you above or below, you would not be allowed to withdraw your plea; and notwithstanding that, you went ahead and entered a plea; correct?

A. Correct.

*Id.*

Lastly, in *Stufflebean,* we rejected the defendant's post-conviction relief motion to withdraw his guilty plea after concluding that "the guilty plea record revealed that both the prosecutor and Mr. Stufflebean's attorney agreed that the State's sentence recommendation for probation was merely a non-binding recommendation." 986 S.W.2d at 193. Moreover, we held that

the plea court did not err because we found that it was not unreasonable for it to conclude that the defendant's assertion (that he did not understand the ramifications of entering into a "non-binding" plea agreement) was not believable, and that the defendant "failed to show that counsel incorrectly advised him that he would be able to withdraw his plea if he did not receive probation." *Id.* We noted that "[w]hile the court did not specifically ask Mr. Stufflebean if he understood that he would not be allowed to withdraw his plea if the sentencing court did not follow the State's recommendation, nothing existed in the record from which Mr. Stufflebean could have inferred he had such a right." *Id.* However, immediately after making this statement, we cautioned the lower court that the failure to make this fact expressly clear to a defendant in the future could result in reversible error:

A better practice, to avoid such claims in cases where a defendant pleads guilty to a charge and the prosecuting attorney makes a non-binding recommendation of sentence, is for the trial court, before accepting the defendant's guilty plea, to specifically advise the defendant on the record that should the court decline to follow the prosecutor's recommendation, the defendant will not be permitted to withdraw his guilty plea.

*Id.* at 193–94.

Accordingly, in *Stufflebean,* we made it clear that had there been an indication in the record that the defendant did not understand the ramifications of entering a non-binding plea agreement, the outcome would have been different.

■ After reviewing *Harrison, Comstock,* and *Stufflebean,* we conclude that all three of those cases are factually distinct and different from today's case. At Mr. Thomas' plea hearing, before he pled guilty, the error committed by the court

was not so much what it did say, but more so what it *failed to say*. Contrary to the State's assertions, our case cannot be analogized to those cases. The plea court didn't fully explain, and Mr. Thomas never demonstrated a full understanding of, a "non-binding" plea agreement. At Mr. Thomas' plea hearing, the plea court stated:

> [The Court]: In this circuit there is also no such thing as a binding plea agreement. The court is not bound by anything that you all agree to, except that I hold the State to its agreement. If that's the State's agreement, and you agree that's their agreement, then I won't let them go beyond that, but it doesn't bind the court.

What the plea court failed to explain to Mr. Thomas is critical—that if the court chose not to follow the plea agreement he reached with the State, Mr. Thomas would not have an opportunity to withdraw his guilty plea. In both *Comstock* and *Harrison*, the same failure did not occur. 68 S.W.3d at 562–64; 903 S.W.2d at 209–10. Therefore, it cannot be said that the record reflects that Mr. Thomas had an understanding of the ramifications of entering into a non-binding plea agreement.

Moreover, today's case is distinct from *Stufflebean* because in that case the defendant "failed to show that counsel incorrectly advised him that he would be able to withdraw his plea if he did not receive probation." 986 S.W.2d at 193. Here, not only does it seem that Mr. Thomas did not understand the nature of a "non-binding" plea agreement, but his *attorney* may not have comprehended the ramifications of such an agreement. Mr. Thomas and his attorney showed some misunderstanding at the sentencing hearing, where his attorney objected immediately after the judge sentenced Mr. Thomas to *consecutive* terms:

> [The Court]: With respect to count four the court sentences and commits the defendant to the custody of the Missouri Department of Corrections for a period of 25 years to be served consecutive to the sentence in count one and count two. But concurrent with count three.
>
> [Mr. Fischer]: Your Honor—
>
> [The Court]: Just a minute. The request for probation is denied in each of the four counts. . . . Yes, Mr. Fischer
>
> [Mr. Fischer]: When this plea was made to the court, I believe there was some, there wasn't a plea bargain, but there was some statement that the prosecution, the State and I had made the plea with the understanding that any and all sentences would be, and the record will reflect, would be given concurrently. And that was the basis of our willingness to enter the pleas to the court. And the record should reflect that.
>
> * * *
>
> [The Court]: The petition to enter plea of guilty signed by the defendant states that the plea bargain was that the state would not oppose a presentence investigation. They did not. They would not recommend no parole. They did not. . . .
>
> The matter is adjourned.
>
> [Defendant]: Your Honor—
>
> [Mr. Fischer]: Your Honor, I would request that we be granted leave to withdraw the plea of guilty, or I'll make *appropriate filings to that effect*.
>
> [The Court]: Oral motion to withdraw the plea of guilty is denied.

▬ If Mr. Thomas' attorney understood the ramifications of entering a non-binding plea agreement, surely he would *not have asked to withdraw his client's* plea of guilty immediately after the sentence was handed down. Of course, this request is contrary to the very definition

of "non-binding" plea agreement: "that the court does not have to allow defendant to withdraw the plea even though the court is not planning to follow the prosecutor's recommendation." *Harrison*, 903 S.W.2d at 209 n. 2. Indeed, Mr. Thomas' brief before this court shows that his attorney may have misunderstood the nature and impact of entering into a "non-binding" plea agreement. In the brief, Mr. Thomas argues that the trial court erred by deviating from the plea agreement "without first (1) informing Appellant of its intent to do so, and (2) giving Appellant the opportunity to withdraw his guilty pleas." But, as now stated on many occasions, in a non-binding plea agreement scenario the plea court is free to deviate from the plea agreement without further notice to the defendant. *Id.* Accordingly, unlike in *Stufflebean*, we have a situation here where it seems almost certain that Mr. Thomas erroneously believed that he would be able to withdraw his guilty plea if the plea court chose to deviate from the agreement with the State.[5] Today, we hold that in such a situation a defendant cannot be deemed to have entered his plea in a "knowing and voluntary" fashion as guaranteed by the Supreme Court of the United States and the Supreme Court of Missouri. *See Schellert*, 569 S.W.2d at 737–38 ("If the defendant should be ... induced to plead guilty by ... persuasion, or the holding out of hopes which prove to be false or ill

founded, he should be permitted to withdraw his plea.") (quotations and citations omitted); *Hampton v. State*, 877 S.W.2d 250, 252 (Mo.App. W.D.1994).

Finally, it is true that Mr. Thomas signed a petition to enter plea of guilty that stated, in a pre-printed fashion, the following: "It has been made clear to me that in Clay County plea agreements are not binding on the Court. This means I will not be able to withdraw my plea of guilty and have a trial if the Judge does not follow the Prosecutors recommendation(s)." Notwithstanding the fact that he signed this Petition, it cannot be contended that Mr. Thomas actually understood the nature of the "non-binding" plea agreement he entered into for several reasons. This court has held on several occasions that a plea petition cannot act as a substitute for the trial court insuring, on its own right, that a defendant understands the implications of his guilty plea. *Dean v. State*, 901 S.W.2d 323, 326–27 (Mo.App. W.D.1995); *Johnson v. State*, 962 S.W.2d 892, 894–95 (Mo.App. E.D.1998). In *Dean*, we stated the following:

> The Supreme Court obviously did not want to entrust to anyone other than the court the extremely important determination that a defendant's plea was voluntarily and knowingly made. The best way to ascertain that a defendant was

---

5. There was some additional misunderstanding at Mr. Thomas' plea hearing. At the plea hearing, the following occurred:
 THE COURT: What's the range of punishment, Mr. Bellamy?
 MR. BELLAMY: On each count, 10 years to 30 years in the Missouri Department of Corrections, or life in the department of corrections.
 MR. FISCHER: Your Honor, I believe that if we were to plead guilty there was some indication that there would be a dropping of the enhancement provision. Maybe I misunderstood.

MR. BELLAMY: The agreement is that we would not ask the court to make a finding that he is a persistent prior drug offender, which would increase the range so that it would be served without possibility of parole....
THE COURT: I believe that's the law. Is that what you understand the law to be now?
MR. FISCHER: Yes. I might have to take a minute with my client to explain the difference between them, because I misunderstood some of our negotiations.

acting voluntarily with sufficient knowledge and awareness was for the court, personally in open court while the defendant stood before it, to inform the defendant of his or her rights and then to determine whether the defendant waived those rights and understood the nature of the proceeding. Although a writing can inform an individual of his or her rights, the court cannot determine that the individual truly understands those rights unless it follows Rule 24.02's mandate that it inform the individual of those rights personally in open court.

*Id.* at 327.

Accordingly, we hold that the mere fact that the plea petition explained (in three sentences, on page three of a five-page petition) what a non-binding plea agreement consisted of is insufficient to find that Mr. Thomas made a knowing and intelligent plea.

Beyond the fact that the trial court failed to explain the meaning of a "non-binding" plea agreement, the prosecution also failed in fulfilling its critical role in educating the defendant in this regard. As touched upon at length previously in this opinion, the *Harrison* court emphasized that it is the duty of the *prosecution* to insure that the defendant understands what a "non-binding" plea agreement consists of. 903 S.W.2d at 209 (see *supra*) (holding that "unless it is *clear* that defendant understood the effect of the discussions with the *prosecution* as involving a mere non-binding recommendation, then it is plain error to deny defendant an opportunity to withdraw his plea when the court is going to reject the plea agreement") (emphasis added). Central to our conclusion in *Harrison* (that the defendant understood that the plea agreement was non-binding) was "how the agreement was articulated by the prosecutor at the time of

the plea." *Harrison,* 903 S.W.2d at 209. In *Harrison,* the prosecutor played an integral role in informing the defendant of the "non-binding" nature of the plea agreement by continually referring to the agreement as "non-binding" throughout the plea hearing. *Id.* at 209–10. Such was not the case during Mr. Thomas' guilty plea hearing. In our case, the prosecutor did not describe the non-binding nature of the plea agreement to Mr. Thomas. Before Mr. Thomas entered his guilty plea, the prosecution did not expressly refer to the recommendation as "non-binding" like in *Harrison.* The following passage of the plea transcript is illustrative of this point:

> [Mr. Bellamy]: The State will recommend at the time of sentencing concurrent disposition on each of the four counts. We do not anticipate recommending department of corrections on those counts, but it will be a concurrent recommendation and we will not recommend consecutive disposition.

Ultimately, there can be no doubt that the plea court failed to follow the Supreme Court's guidelines in *Schellert* in regard to guilty pleas when a *binding* plea agreement is in effect. 569 S.W.2d at 739. ("If the court rejects the plea agreement, either at the time of the plea proceedings or at the time of sentencing, the court shall, on the record, inform the parties of that fact, advise the defendant personally in open court, or on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity then to withdraw his plea, and advise the defendant that if he persists in his guilty plea, the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.") But even under this court's jurisprudence regarding a "non-binding" plea agreement, Mr. Thomas has still shown that his guilty plea was not

made knowingly and intelligently. *See Harrison,* 903 S.W.2d at 209 ("[U]nless it is *clear* that defendant understood the effect of the discussions with the prosecution as involving a mere non-binding recommendation, then it is plain error to deny defendant an opportunity to withdraw his plea when the court is going to reject the plea agreement"). Overall, based on all of the following information, it cannot be reasonably contended that Mr. Thomas understood the implications of entering into a "non-binding" plea agreement. At no time did the prosecution, defense counsel, or the plea court explain this concept to him on the record. And, perhaps most importantly, is the fact that Mr. Thomas may have believed that he was entering a *binding* plea agreement that his sentences be served concurrently. As such, it was a "manifest injustice" to deny Mr. Thomas an opportunity to withdraw his guilty plea. *See State v. Ralston,* 41 S.W.3d 620, 621 (Mo.App. W.D.2001).

## IV. CONCLUSION

Because Mr. Thomas' first point on appeal is dispositive of this matter, we decline to review his second point. We reverse the plea court, and remand it for a proceeding pursuant to Rule 24.02(d)(4) "to afford the defendant the opportunity to ... withdraw his plea." *Id.*

PAUL M. SPINDEN, P.J. and PATRICIA A. BRECKENRIDGE, J. concur.